UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SAMANTHA SOHMER and KATHY L. FELLGREN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, OPTUM, INC., and OPTUMRX, INC.,<br><br>Defendants. | Case No. 18-cv-03191 (JNE/BRT) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR JUDGMENT ON THE PLEADINGS WITH REGARD TO
DEFENDANTS' COUNTERCLAIM AND AFFIRMATIVE DEFENSE No. 7**

Plaintiff/Counterclaim Defendant Samantha Sohmer ("Plaintiff" or "Counterclaim Defendant"), by her undersigned attorneys, respectfully submits this memorandum of law in support of her motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings as to Defendants United Healthcare Services, Inc.'s and United Healthcare Insurance Company's counterclaim (the "Counterclaim"), which seeks reformation of ERISA-qualified employer-sponsored benefits Plans, and as to all Defendants' Affirmative Defense No. 7, which asserts reformation of ERISA-qualified employer-sponsored benefits Plans.[1]  Both the Counterclaim and Affirmative Defense No. 7, as pled in

---

[1] For clarity, brevity and consistency, this memo simply refers to United Healthcare

Defendants' Amended Answer and Amended Counterclaim [ECF No. 85], assert that Defendants are entitled to reformation of the ERISA Plans (the "Plans") at issue because the Plan language upon which Plaintiffs rely was purportedly a "scrivener's error." As discussed below, Defendants' arguments fail as a matter of law.

I.      **BACKGROUND**

Plaintiff and other putative Class Members were participants in health Plans sponsored by their employers (the "sponsors"). Plaintiff alleges that Defendants, as claims administrators of these employer-sponsored benefit Plans, wrongfully overcharged Plaintiff and the putative Class for medically necessary prescription drugs in violation of the express terms of those Plans. *See, e.g.*, Complaint [ECF No. 1] at ¶¶ 1-21.

Defendants admit in their Counterclaim that they provided administrative services to the Plans. *See, e.g.,* Counterclaim [ECF No. 85] at ¶ 6. Defendants also admit that they provided employer sponsors with templates for, and otherwise participated in the drafting of, the Summary Plan Descriptions ("SPDs") provided to each Plan participant. *Id.* at ¶¶ 6-7. Defendants do ***not*** allege that individual Plan participants were involved with the drafting of Plan documents (and indeed they were not).

Defendants further allege that there was a "scrivener's error" in the Plan templates drafted by Defendants, which they allege caused the SPDs to purportedly contain incorrect language about participant payment obligations under the Plans. *Id.* at ¶¶ 10-14. According to Defendants, "[t]he scrivener's error was unintentional and did not

---

Services, Inc., and United Healthcare Insurance Company (*i.e.,* the Counterclaim Plaintiffs) as "Defendants" even when discussing the Counterclaim.

reflect the intent of the plan sponsors or" Defendants. *Id.* at ¶ 15. This purported scrivener's error persisted for several years and through thousands of Plan documents, until Defendants finally "discover[ed]" the alleged error "recently" (*i.e.,* when Plaintiff filed suit). *Id.* at ¶¶ 13, 14. Accordingly, there is no dispute that Defendants did ***not*** charge participants based upon the terms actually *in* the Plans. Rather, Defendants charged Class Members based on alternate "logic" that Defendants now say ***should have been*** in the Plans. *See, e.g.,* Counterclaim at ¶ 18. This lawsuit seeks to recover these improper overcharges. *See, e.g.,* Complaint at ¶¶ 1, 13-15, 73-89.

In their Counterclaim and Affirmative Defense No. 7, Defendants argue that the foregoing alleged "scrivener's error" excuses the overcharges alleged by Plaintiff. Defendants accordingly claim that they are entitled to *post hoc* reformation of the Plans to rewrite the documents to remove the purported error. However, as set forth below, Defendants' reformation counterclaim and affirmative defense fail as a matter of law.

## II.   LEGAL STANDARD

Plaintiff brings this motion pursuant to Fed. R. Civ. P. 12(c).[2] A motion for judgment on the pleadings under Rule 12(c) follows the same standard as a motion under Rule 12(b)(6) or 12(f). *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("[t]his distinction" between Rule 12(b)(6) and Rule 12(c) "is purely formal, because we

---

[2] Plaintiff is proceeding under Rule 12(c), which governs motions for judgment on the pleadings "[a]fter the pleadings are closed," rather than under Rules 12(b)(6) (to dismiss the Counterclaim) or 12(f) (to strike Affirmative Defense No. 7), both of which apply before the close of pleadings, because Plaintiff has already filed an answer [ECF No. 87] to Defendants' Amended Answer and Amended Counterclaim.

3

review [a] 12(c) motion under the standard that governs 12(b)(6) motions"); *Residential Funding Co., LLC v. Embrace Home Loans, Inc.*, No. 13-2457 (PAM.FLN), 2015 WL 2868133, at *1 (D. Minn. June 23, 2015) ("the standard of review under either" Rule 12(c) or 12(f) for dismissing or striking an affirmative defense "is indistinguishable"). Accordingly, to survive Plaintiffs' Rule 12(c) motion, Defendants' Counterclaim and Affirmative Defense No. 7 "must allege sufficient facts such that, when the facts are accepted as true, a facially plausible claim for relief is stated." *My Pillow, Inc. v. LMP Worldwide, Inc.*, No. 18-cv-0196 (WMW/DTS), 2019 WL 6727298, at *1 (D. Minn. Dec. 11, 2019).

### III.   ARGUMENT

#### A.   Defendants' Reformation Counterclaim Fails

Plaintiff should be granted judgment on the pleadings with regard to Defendants' reformation counterclaim, both because Defendants lack standing to pursue reformation as an equitable remedy under either ERISA or the Declaratory Judgment Act and because Plan reformation is not an available declaratory judgment remedy.

#### 1.   Defendants Lack Standing to Pursue Their Counterclaim

Reformation is an equitable remedy available under ERISA. *Cigna Corp. v. Amara*, 563 U.S. 421, 438-42 (2014); *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 722-23 (8th Cir. 2014). However, anyone who seeks to equitably modify the terms of an ERISA plan ***must*** proceed under the provisions of ERISA *itself*, as ERISA's comprehensive federal statutory scheme fully preempts any state law remedies. *Dakotas & W. Minn. Elec. Indus. Health and Welfare Fund v. First Agency, Inc.*, 865 F.3d 1098,

4

1101 (8th Cir. 2017).³  ERISA preemption of state law "extends to § 502(a)(3)." *Lyons v. Philip Morris, Inc.*, 225 F.3d 909, 912-13 (8th Cir. 2000).  Indeed, Defendants themselves rely on § 502(a)(3) as the legal basis for their reformation counterclaim.  *See* Counterclaim at ¶¶ 20-22.

Defendants' claim under section 502(a)(3) fails because that section expressly limits the entities who may seek "equitable relief" such as reformation to a Plan "participant, beneficiary or fiduciary."⁴  Courts routinely and rigorously enforce this limitation.  *See*, *e.g., Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1028-29 (5th Cir. 2015) (non-fiduciary "ministerial agent" that performed assigned duties as "collections agent" lacks standing to pursue claims under § 502(a)(3)).⁵  Defendants

---

³ As explained in *First Agency*:

> ERISA is a "comprehensive legislative scheme" that includes "an integrated system of procedures for enforcement" that are "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quotation omitted). "The six carefully integrated civil enforcement provisions found in § 502(a) of [ERISA] provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (emphasis in original). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy ... is therefore preempted...." *Davila*, 542 U.S. at 209 (quotation omitted).

875 F.3d at 1101.

⁴ ERISA § 502 provides "**(a) Persons empowered to bring a civil action.** A civil action may be brought … (3) ***by a participant, beneficiary or fiduciary*** … (B) to obtain other appropriate equitable relief …" (emphasis added.)

⁵ *See also Cent. Valley AG Cooperative v. Anasazi Med. Payment Sols.*, 8:17CV379, 2018 WL 2056227, at *11 (D. Neb. Mar. 29, 2018) (because "only participants,

5

obviously are not participants or beneficiaries. To the extent that Defendants contend they have standing as fiduciaries, that allegation is not "well pled."

In their counterclaim, Defendants do not expressly allege that they were fiduciaries. Rather, Defendants claim in conclusory fashion that they had "final discretionary authority to *resolve all claims for benefits* presented under the terms of the respective Plans" and thus, by inference, were fiduciaries. *See* Counterclaim at ¶ 5 (emphasis added). As the Court may recall, Defendants fought hard in an earlier phase of this litigation to establish that they did *not* act as Plan fiduciaries with regard to the very same conduct. *In re: UnitedHealth Group PBM Litig.,* No. 16-cv-3352 (D. Minn.) ("*Sohmer I*"). That case involved the same Plaintiff, Sohmer, alleging claims concerning the same prescription drug benefits. Sohmer alleged specifically and in great detail numerous facts demonstrating that Defendants were fiduciaries because they engaged in the conduct that resolved all claims for benefits. *See* Consolidated Class Action Complaint in *Sohmer I* [ECF 52] at ¶ 153.

---

beneficiaries and fiduciaries can sue for injunctive relief" under § 502(a)(3), "an ERISA plan does not have standing to sue"), *adopted by* 2018 WL 2049842 (D. Neb. May 1, 2018); *Koeplin v. Klotz*, 265 F. Supp. 3d 1039, 1042 (N.D. Cal. 2017) ("ERISA does not authorize a [non-fiduciary] plan administrator to bring a civil action to enforce ERISA [under] 29 U.S.C. § 1132(a)(3)"); *Drummond Co., Inc. v. Mann*, No. 04-AR-0916-S, 2005 WL 8157956, at *4 (N.D. Ala. Aug. 31, 2005) ("Mann is correct to point out that § 1132(a)(3) does not confer standing on Drummond as [non-fiduciary] plan administrator to seek equitable relief under ERISA"); *Surgicore, Inc. v. Midwest Operating Eng'rs Health & Welfare Fund,* No. 01 C 9138, 2002 WL 31833767, at *2 (N.D. Ill. Dec. 13, 2002) ("inappropriate" for entity that is not a participant, beneficiary or fiduciary "to rely upon § 1132(a)(3) as the jurisdictional basis for its counterclaim").

In support of their Motion to Dismiss, Defendants in *Sohmer I* argued vigorously that "[a]s a threshold matter, Plaintiffs **cannot** allege that Defendants acted as ERISA fiduciaries by administering Plaintiffs' ERISA plans." Defendants' Memorandum In Support of Motion to Dismiss Consolidated Class Action Complaint in *Sohmer I* [ECF 67] at 24 (emphasis added). This Court accepted Defendants' argument that resolving all claims for benefits – the very same conduct Defendants now allege in their Counterclaim – did **not** make Defendants into fiduciaries. *See In re: UnitedHealth Group PBM Litig.*, No. 16-cv-3352, 2017 WL 6512222, at *8-11 (D. Minn. Dec. 17, 2017).[6]

Defendants cannot have it both ways. The doctrine of judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Jones v. Bob Evans Farms, Inc.,* 811 F.3d 1030, 1032-33 (8th Cir. 2016) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001)). That is exactly what Defendants are attempting to do here.[7] Moreover, even where (as in

---

[6] The "Defendants" covered by the Court's ruling in *Sohmer I* include all of the present Defendants/Counterclaimants. 2017 WL 6512222, at *1 n.1.

[7] Defendants' change in positions regarding their fiduciary status runs directly afoul of all three prongs of the Eighth Circuit's judicial estoppel test:

> First, a party's later position must be clearly inconsistent with its prior position. Second, a court should consider whether a party has persuaded a court to accept its prior position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Finally, a court should consider whether the party asserting inconsistent positions would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Jones,* 811 F.3d at 1032-33 (internal quotation marks and citations omitted).

7

*Sohmer I*) a previous dismissal was without prejudice, "an *issue* actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties." *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001) (quoting *Pohlmann v. Bil–Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir.1999)) (emphasis in original).

Even apart from judicial estoppel, Defendants cannot, consistent with Rule 11 and their good faith obligations, obtain a dismissal in *Sohmer I* by arguing they were ***not*** fiduciaries in "resolv[ing] all claims for benefits," only to pivot in *Sohmer II* to argue that they in fact ***are*** fiduciaries for the same conduct in order to avoid dismissal of their counterclaim and affirmative defense. Such irreconcilably inconsistent and conclusory allegations are not well-pled and cannot defeat a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In sum, Defendants have not plead they have standing as a participant, beneficiary or fiduciary. Therefore, the counterclaim under ERISA should be dismissed.

### 2. The Declaratory Judgment Act Does Not Authorize Reformation of ERISA Plans

Perhaps recognizing that they have not alleged (and do not have) standing to seek reformation under ERISA § 502, Defendants also assert that they may seek reformation of the ERISA Plans pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq. See* Counterclaim at ¶¶ 21-22 and Counterclaim Prayer for Relief ¶¶ 3-4. Defendant's attempted end-run around ERISA fails as a matter of law.

8

First, Defendants may not seek under the DJA the exact same relief (equitable reformation) they are specifically prevented from seeking under ERISA § 502. As courts have noted, "[a]llowing this argument would rewrite the [ERISA] statute." *Managing Directors' Long Term Incentive Plan v. Boccella*, 14 Civ. 7033 (PAC), 2015 WL 2130876, at *4 (S.D.N.Y. May 6, 2015); *Albradco, Inc. v. Bevona*, 982 F.2d 82, 85 (2d Cir. 1992) (affirming dismissal of DJA claim because "we read *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987), to permit ERISA suits, including declaratory judgment actions, *only* by plaintiffs specified in ERISA § 502(a), and the appellants do not qualify") (emphasis added). Indeed, any such action would undermine ERISA's carefully structured statutory scheme. "[T]o allow such a declaratory judgment action to proceed would render ERISA's strict jurisdictional rules toothless, because it would allow courts to exercise jurisdiction over cases brought by plaintiffs who have not been specifically enabled to sue under ERISA." *Oxford Health Ins., Inc. v. Motherly Live Home Care Servs.*, 237 F. Supp. 3d 25, 35 (E.D.N.Y. 2017) (internal quotations and citations omitted).

Second, even if Defendants could use the DJA to create procedural *standing* (which they cannot), a declaratory judgment may not in any event be used to obtain the *substantive* remedy of reformation that Defendants seek. A declaratory judgment is meant to clarify (declare) existing rights under the existing language of a contract, not to rewrite the contract into something new:

> [T]here is a significant distinction between equitable claims seeking reformation of a contract and claims for declaratory relief which seek merely a determination of the parties' *existing* rights and status under a

9

> contract[.] It is well settled that courts are not authorized to reform instruments within the framework of a declaratory judgment action…. Such a proceeding is limited to the adjudication of rights under *existing* documents or legislation as then written.

*Celec v. Edinboro Univ.*, 132 F. Supp. 3d 651, 663 (W.D. Penn. 2015) (emphasis in original; citations and ellipses omitted). Accordingly, "[d]eclaratory relief is proper only to declare the existing state of parties' legal relationship – not to modify that legal relationship" through contract reformation. *Hartford Ins. Co. of the Midwest v. Dana Transport Inc.*, No. 16-cv-9091-KM-JBC, 2018 WL 10152321, at *6 (D.N.J. May 21, 2018). As the Eighth Circuit has likewise held, the DJA "does not create any new substantive right" but simply "creates a procedure for adjudicating *existing* rights." *W. Cas. & Sur. Co. v. Herman*, 405 F.2d 121, 124 (8th Cir. 1968) (emphasis added); *see Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 923 (S.D. Iowa 2018) (quoting *Herman*, 405 F.2d at 124).[8]

In sum, Defendants cannot obtain reformation under the DJA. A declaratory judgment may only be used to seek a declaration as to the meaning of the Plans ***as written***. But the DJA may not be used to ***rewrite*** a Plan wholesale. *See, e.g., Prudential Ins. Co. of America v. Doe,* 76 F.3d 206, 210 (8th Cir. 1996) (entity not specifically

---

[8] To the extent that *Celec* and *Hartford Ins. Co.* relied upon state court interpretations of the Pennsylvania and New Jersey enactments of the Uniform Declaratory Judgment Act in interpreting the reach of the federal DJA in those federal districts, Minnesota courts have likewise held that Minnesota's state DJA "cannot create a cause of action that does not otherwise exist." *Hoeft v. Hennepin Cty.*, 754 N.W.2d 717, 722 (Minn. Ct. App. 2008).

authorized to file claim under ERISA may "file a declaratory judgment action to *interpret* a policy") (emphasis added).

## B. Defendants' Reformation Affirmative Defense Fails

Even assuming reformation may properly be pled as an affirmative defense,[9] Defendants' reformation Affirmative Defense No. 7 fails for being legally insufficient.[10] Specifically, "[i]n raising an affirmative defense, a defendant is seeking the jurisdiction of the court to hear its claims as much as a plaintiff and, therefore, standing becomes an issue for the defendant as well." *United States v. Neset*, 10 F. Supp. 2d. 1113, 1116 (D.N.D. 1998). Where a defendant seeks by affirmative defense to exercise the same rights and remedy that would otherwise be enforced by a direct claim, that defendant must meet the same standing requirements as would be necessary for the direct claim. *See id.* at 1114-16 (defendant cannot attack by affirmative defense Federal Communications Commission regulations that he lacked standing to challenge directly).

Moreover, "it does not matter whether" a defendant "is attempting to assert" certain claimed rights "in the form of a counterclaim or an affirmative defense. In either instance," the defendant "must demonstrate standing." *DZ Bank AG Deutsche Zentral-*

---

[9] *See United States v. Skorepa*, No. 5:05 CV 750, 2005 WL 3634605, at *6 (N.D. Ohio) (noting that reformation "is not an affirmative defense listed in Fed. R. Civ. P. 8(c)" and thus "constru[ing] the affirmative defense broadly as a counterclaim.")

[10] Although there is a "split amongst district courts, both within and outside the Eighth Circuit, regarding whether the plausibility standard established in *Twombly* and *Iqbal* applies to affirmative defenses," there is no dispute that a special defense is properly stricken under Fed. R. Civ. P 12(f) if the asserted defense is facially legally "insufficient." *Acosta*, 2018 WL 7350478, at *1-2.

11

*Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 WL 631574, at *21 (W.D. Wash. Feb. 16, 2016) (citing *Neset, supra,* and holding that defendant cannot raise by affirmative defense a contractual right it lacks standing to pursue by counterclaim); *see Ringers Techs. LLC v. Harmer*, No. H-18-4347, 2020 WL 1173509, at *3-4 (S.D. Tex. Feb. 13, 2020) ("[d]efendant's affirmative defense of invalidity is legally insufficient" because "[d]efendant's creative, if confusing, discourse cannot circumvent the legal requirements for establishing standing to assert a declaratory action seeking a determination that a patent is invalid"), *adopted by* 2020 WL 1169394 (S.D. Tex. Mar. 11, 2020).

As discussed above, Defendants lack standing to pursue reformation under ERISA § 502. Defendants cannot do an end run around ERISA's integrated statutory scheme by seeking the same relief (reformation) by affirmative defense that it lacks standing to obtain directly. Plaintiff Sohmer should be granted judgment on the pleadings with regard to Affirmative Defense No. 7.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff Sohmer respectfully requests that her motion for judgment on the pleadings with regard to Defendants' Counterclaim and Affirmative Defense No. 7 be granted in full.

Dated: June 30, 2020                                                       Respectfully submitted,

*/s/ Amanda M. Williams*
Daniel E. Gustafson (#202241)
Amanda M. Williams (#341691)
David A. Goodwin (#386715)
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
dgoodwin@gustafsongluek.com

Derek W. Loeser
Gretchen S. Obrist (*Pro Hac Vice*)
Matthew Gerend (*Pro Hac Vice*)
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com
mgerend@kellerrohrback.com

Ron Kilgard (*Pro Hac Vice*)
Chanele N. Reyes (*Pro Hac Vice*)
KELLER ROHRBACK, LLP
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
rkilgard@ kellerrohrback.com
creyes@kellerrohrback.com

Robert A. Izard (*Pro Hac Vice*)
Craig A. Raabe (*Pro Hac Vice*)
Christopher M. Barrett (Pro Hac Vice)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (*Pro Hac Vice*)
Mathew P. Jasinski (*Pro Hac Vice*)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Erin Green Comite (*Pro Hac Vice*)
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
ecomite@scott-scott.com

Joseph P. Guglielmo (*Pro Hac Vice*)
Carey Alexander (*Pro Hac Vice*)
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Ronen Sarraf
Joseph Gentile
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone: (516) 699-8890
Facsimile: (516) 699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

Brian C. Gudmundson (#336695)
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com

*Attorneys for Plaintiffs/
Counterclaim Defendants*