UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SAMANTHA SOHMER, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiffs,<br><br>vs**.**<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, OPTUM, INC., and OPTUMRX, INC.,<br><br>  Defendants. | Case No. 18-cv-03191 (JNE/BRT)<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES** |

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

    A. Key Facts and Basic Context for Plaintiff's Motion................................2

    B. Network Pharmacy Transactions ..............................................................3

    C. Defendants Have Produced Gigabytes of Data on Hundreds of Millions of Claims so that Plaintiffs Can Identify the Transactions at Issue and Calculate Damages...............................................................................4

    D. Defendants Have Produced Documents and Engaged in Extensive Communications With Plaintiff Explaining the Transaction Data .........5

    E. Defendants Responded to Interrogatory No. 2 and Document Request Nos. 25, 26 and 30 Many Months Ago, and Have Since Provided Additional Information Relevant To Those Requests..................................................6

III. LEGAL STANDARD.............................................................................................6

IV. ARGUMENT..........................................................................................................7

    A. Defendants' Amended Interrogatory Response Eliminates Any Dispute as to Interrogatory No. 2 ....................................................................................7

    B. Defendants' Amended Responses to Document Request Nos. 25, 26 and 30 Are More Than Sufficient Under the Federal Rules.........................11

        1. Request No. 25 ("Prescription Drug Transaction Data")...........12

        2. Request No. 26 (Databases, data elements and dictionaries).....13

        3. Request No. 30 ("All Documents" necessary to calculate class claims)........................................................................................14

V. CONCLUSION.....................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Haddley v. Next Chptr. Tech.*,
 2018 U.S. Dist LEXIS 237983 (D. Minn. Mar. 23, 2018) .................................................7, 14

*Nicollet Cattle Co. v. United Food Grp.*,
 No. 08-5899, 2010 U.S. Dist. LEXIS 158686 (D. Minn. Aug. 3, 2010) ..................................9

*Orduno v. Pietrzak*,
 2016 WL 5853723 (D. Minn. Oct. 5, 2016) .............................................................................6

*Perfect 10 Inc. v. Giganews, Inc.*,
 No. 11-cv-7098, 2014 WL 12586247 (C.D. Cal. June 2, 2014) ............................................10

*Powerhouse Marks, L.L.C. v. Chi Hsin Impex, Inc.*,
 No. 04-cv-73923, 2005 WL 8154950 (E.D. Mich. Nov. 15, 2005) .......................................11

*WIMCO, LLC v. Lange Indus., Inc.*,
 No. 06-cv-3565, 2007 WL 9747496 (D. Minn. Oct. 2, 2007) ...............................................11

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................................6

Fed. R. Civ. P. 30 ..........................................................................................................................11

Fed. R. Civ. P. 33 ..............................................................................................................6, 8, 9, 11

D. Minn. Local Rule 37.1 ........................................................................................................7, 14

## I. INTRODUCTION

Plaintiff brought this purported class action challenging insurance benefits for an extremely broad prospective class. Defendants went to extraordinary efforts to produce claims data for over 400 million claims stretching back over a decade and drawn from multiple databases. They produced over 36,000 plan documents. They provided Plaintiff with repeated and detailed explanations of how to interpret and understand the claims data. Having now decided that the claims data for the intended class is "massive and unwieldy," Mtn. at 15, Plaintiff seeks to compel Defendants to identify and produce significantly more information and analysis – including describing hundreds of millions of claims in narrative form – because she believes it might be useful for her damage calculation. The law requires no such thing, and Plaintiff's motion should be denied.

Plaintiff's Motion to Compel Further Production of Documents and Responses to Interrogatories (the "Motion") asks this Court to compel Defendants to take two actions: (1) amend written discovery responses and (2) provide detail beyond the enormous amount of data already provided, and beyond anything that Defendants maintain in the normal course of business, about hundreds of millions of separate prescription drug transactions. Defendants recently complied with the former; the latter is neither feasible nor required under the Rules of Civil Procedure. As they have done throughout this complex and data-heavy case, Defendants will continue to work with Plaintiff to ensure all parties have the information necessary to proceed with litigation, but Defendants should not be forced to engage in unduly burdensome analysis of millions of data points

to provide Plaintiff with information in a form that does not exist in the ordinary course of business.

## II. BACKGROUND

### A. Key Facts and Basic Context for Plaintiff's Motion

In this lawsuit, Plaintiff seeks damages based on a drafting mistake in summary plan descriptions ("SPDs") prepared by UnitedHealthcare ("United"), the claims administrator of Plaintiff's self-insured employer's prescription drug benefit plan. *See generally,* Compl. (Dkt. 1.)  Plaintiff seeks these damages—benefits her employer did not request or pay for, and that neither the employer nor Plaintiff expected to receive—not only on her own behalf, but on behalf of *all* beneficiaries of *any* prescription drug plan administered by United where such error occurred in the SPD dating back as many as ten years. *Id*.  As a result, the scope of discovery in this case is immense and involves hundreds of millions of individual transactions.

Specifically, based on the drafting error, Plaintiff challenges the copayments she paid to obtain prescription drugs. *Id*.  Plaintiff contends that she was sometimes required to pay more for prescription drugs than what the pharmacy agreed to be reimbursed for dispensing that same drug (the "Pharmacy Rate"). *Id*.  But Plaintiff (and all putative class members) was charged what she should have been charged according to the intent of her plans, the way the plans were underwritten and paid for by her employer, and consistent with the standard pharmacy benefit structure for United's self-funded customers at the time. *See generally,* Countercl. (Dkt. 73.)  Moreover, Plaintiff has yet to identify a single putative plaintiff who actually read, understood or relied upon the

2

drafting error in the summary plan descriptions that Plaintiff purports entitle her to pay the Pharmacy Rate. Still, Plaintiff seeks undefined "damages" based on the difference between what she and others paid for each drug they purchased (*i.e.*, the "Participant Contribution") and the Pharmacy Rate, if the Participant Contribution was higher. *See generally,* Compl. (Dkt. 1.) Plaintiff does not complain about the many, many transactions where she and the putative class paid less than the Pharmacy Rate. Defendants have produced all of the prescription drug transaction data necessary to calculate these alleged damages. Declaration of Meghan DesLauriers ("DesLauriers Decl.") at ¶ 3.

### B. Network Pharmacy Transactions

During the relevant time period, United-administered prescription drug benefit plans typically determined the Participant Contribution in one of two ways:

- The participant paid the lesser of (1) the Participant Contribution or (2) the price that the pharmacy would charge a participant regardless of whether the participant had insurance (sometimes referred to as the "retail cash price" or the pharmacy's "usual and customary" charge ("U&C")). This methodology is referred to as "lesser-of-two logic."

- The participant paid the lesser of (1) the Participant Contribution, (2) the pharmacy's U&C, or (3) a negotiated rate. This methodology is referred to as "lesser-of-three logic." The calculation of the negotiated rate depends on whether the self-funded plan chose traditional or pass-through pricing. If pass-through pricing, the negotiated rate was the same as the contracted rate with the pharmacy.

Prior to 2018, Plaintiff's claims were adjudicated as "lesser-of-two." She alleges that she should have only paid under a "lesser-of-three" logic and only pay the contracted rate with the pharmacy when such rate was lower than her copayment or U&C. *See*

3

*generally,* Compl. (Dkt. 1.)

### C. Defendants Have Produced Gigabytes of Data on Hundreds of Millions of Claims so that Plaintiffs Can Identify the Transactions at Issue and Calculate Damages

In response to discovery requests in the case, Defendants have produced over 36,000 SPDs as well as 112 gigabytes of data for over 400 million prescription drug transactions dating back to 2010 (the "Transaction Data"). DesLauriers Decl. at ¶¶ 2-3.

Defendants engaged in a cooperative, iterative process to identify potentially affected plans and produce information to Plaintiff. The drafting error in the SPDs was identified as impacting certain Key and National Account self-funded customers of United, although precisely which ones and when was not known to Defendants.[1] Accordingly, Defendants agreed to produce the Transaction Data for all Key and National Account self-funded customers. Defendants undertook extensive steps to collect this information. DesLauriers Decl. at ¶ 4. It took several months of effort to identify the source(s), determine how to pull the required information, isolate the data fields needed to provide the information requested by Plaintiff, and prepare the enormous collection of data for transmission to Plaintiff. *Id*. Because Plaintiff's allegations date back to 2010, Defendants had to draw upon multiple sources of information to produce a

---

[1] The reason it was not known is due to ERISA's division of responsibilities between the Plan Sponsor and the third party administrator. It is the duty of the Plan Sponsor (*i.e.,* Plaintiff's employer) to finalize and supply the plan documents to members, although third party administrators (including Defendants) typically provide draft documents to the Plan Sponsor to be finalized and provided to the members. The Plan Sponsors do not always provide Defendants with a copy of the finalized SPD that was provided to members. *See* DesLauriers Decl., Ex. B.

complete set of Transaction Data. Specifically, United utilized third party pharmacy benefit manager Medco Health Solutions, Inc. ("Medco") to adjudicate pharmacy claims until the middle of 2013, when it switched to OptumRx for that function. United needed to collect and provide Transaction Data from OptumRx, from an internal United database containing some historical Medco data, as well as from data archives. *Id*.

Defendants have also provided a specific list of SPDs that may have been impacted by the drafting error. *Id*. at ¶ 5. The list contains certain fields that align with fields in the Transaction Data.

### D.  Defendants Have Produced Documents and Engaged in Extensive Communications With Plaintiff Explaining the Transaction Data

In addition to producing tens of thousands of SPDs and hundreds of millions of claims transactions, Defendants have produced multiple documents and narrative explanations, including data dictionaries and crosswalks, to help Plaintiff understand the claims data. *Id*. at ¶ 6.

Defendants have also spent significant time working with Plaintiff's counsel to ensure they and their experts can use the information as provided. Beginning as early as April 2020, before Defendants had even produced the Transaction Data, Defendants have been answering questions and proactively offering updates. *Id*. at ¶ 7. As part of the mediation process, Defendants answered detailed questions about how to match plans to the Transaction Data. *Id*. at ¶ 8. Those communications continued throughout the summer. Indeed, on the same day Plaintiff filed the present Motion, Defendants provided a five-page, single-spaced letter answering Plaintiff's additional questions. *Id*. at ¶ 9, Ex.

A. As recently as September 21, the parties engaged in a meet-and-confer telephone conference to continue the exchange of information. *Id.* at ¶ 10.

### E. Defendants Responded to Interrogatory No. 2 and Document Request Nos. 25, 26 and 30 Many Months Ago, and Have Since Provided Additional Information Relevant To Those Requests

Defendants timely served their responses to Document Request Nos. 25, 26 and 30 and Interrogatory No. 2 (the "Responses") in April and November 2019, respectively. Plaintiff never complained about Defendants' Responses or raised the issue of the written Responses in any meet-and-confer conference until shortly before filing the present Motion—and then only raised an issue with respect to Interrogatory No. 2. Nevertheless, understanding that their Responses to those requests were drafted during an earlier stage of discovery and prior to Defendants' collection and production of the Transaction Data, Defendants have amended their Responses and served them on Plaintiffs, mooting much of the present Motion. *Id.* at ¶ 11, Exs. B-C.

## III. LEGAL STANDARD

Discovery in federal civil cases must be relevant to a party's claims or defenses and proportional to the needs of the case, taking into account, among other things, the parties' relative access to the information and whether the burden of gathering the information would be approximately equal for both parties. Fed. R. Civ. P. 26(b)(1); *see also Orduno v. Pietrzak*, 2016 WL 5853723, at *3 (D. Minn. Oct. 5, 2016) (citing Fed. R. Civ. P. 26(b)(1)); Fed. R. Civ. P. 33(d)).

The District of Minnesota Local Rules require a party challenging a discovery response to provide "a concise statement of why the disclosure, answer, response,

production, or objection is insufficient, evasive, incomplete, or otherwise improper."

L.R. 37.1(d).  A court may summarily deny a motion to compel for failure to adhere to this rule.  *See Haddley v. Next Chptr. Tech.,* 2018 U.S. Dist LEXIS 237983 (D. Minn. Mar. 23, 2018).

## IV. ARGUMENT

### A. Defendants' Amended Interrogatory Response Eliminates Any Dispute as to Interrogatory No. 2

In Interrogatory No. 2, Plaintiff seeks extremely detailed information about each of hundreds of millions of claims, including

> (a) date prescription was filled; (b) patient's name; (c) all claim identification codes and numbers; (d) all member/participant identification codes and numbers; (e) drug name; (f) pharmacy name; (g) pharmacy identification code and number; (h) average wholesale price; (i) usual and customary charge; (j) drug tier; (k) applicable copayment or coinsurance amount under the applicable plan for the respective drug tier; (l) all ingredient costs; (m) all dispensing fees; (n) all sales tax amounts; (o) copayment amount paid; (p) coinsurance amount paid; (q) amount paid toward deductible; (r) remaining balance of deductible after payment of claim; (s) amount paid to pharmacy; (t) funding arrangement; and (u) claim status.

Defendants initially responded to Interrogatory No. 2 in November 2019—six months before either side had access to the Transaction Data.  In the following ten months, Defendants produced claims data for hundreds of millions of claims from multiple databases, answered additional interrogatories seeking similar information, engaged in numerous meet-and-confers, and provided written and oral explanations of the data.  *See* DesLauriers Decl. at ¶¶ 3-10.  Defendants were unaware of any dispute as to

7

this Interrogatory Response—which had been superseded by literally gigabytes of data, subsequent interrogatories, pages of explanation and numerous conferences between counsel—until just weeks before this discovery motion was filed.

When Plaintiff identified this dispute, Defendants served a supplemental response to Interrogatory No. 2 on September 24, 2020 ("Supplemental Answer"). DesLauriers Decl., Ex. B. The Supplemental Answer is a responsive narrative that explains:

- which fields in each of the Transaction Data sets correspond to the specific data elements Plaintiff requested in Interrogatory No. 2 subparts (a) – (u);
- which fields were produced;
- where applicable, what information is not available in the Transaction Data;
- which data Defendants objected to providing—objections that were raised in Defendants' original objections served in November 2019 and to which Plaintiff never responded, challenged or requested additional information; and
- the specific documents and records produced pursuant to Federal Rule of Civil Procedure 33(d), and identified by Bates number.

This Supplemental Answer provided Plaintiff with step-by-step instructions on how to identify the plans at issue in this case based on the SPDs produced to her, and how to align that information with the Transaction Data. Defendants' Supplemental Answer described where to find the relevant information in the data sets Defendants have produced, how to use the applicable fields in performing calculations, and how to align the data sets. Plaintiff argues that "Defendants must provide Plaintiff[] with narrative

8

responses sufficient to enable them to ascertain the information sought." Dkt. 144 at 10. Defendants have done just that, and Plaintiff's motion is now moot as to this point.

If and to the extent Plaintiff seeks a narrative explanation of each of the 400+ million claims, Defendants maintain their previously stated and unchallenged objections, as well as their reliance on Rule 33. Specifically, among other unchallenged objections, Defendants objected to Interrogatory No. 2 as "overly broad and unduly burdensome, considering the parties' relative access to relevant information, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit" and agreed to "produce available prescription drug transaction data…sufficient to show the information sought by this interrogatory," consistent with Fed. R. Civ. P. 33(d).

If the Rule 33(d) option to produce business records in lieu of a narrative response is to have any meaning, it exists for precisely this scenario. *See* Fed. R. Civ. P. 33(d); *see also Nicollet Cattle Co. v. United Food Grp.*, No. 08-5899 (JRT/FLN), 2010 U.S. Dist. LEXIS 158686, at *3 (D. Minn. Aug. 3, 2010) (affirming use of Rule 33(d)). This is not the proper scope of an Interrogatory and would turn the one Interrogatory into hundreds of millions of separate Interrogatories if Defendants had to answer the Interrogatory to identify "each claim"—far beyond the 25 Interrogatory limit in this case. To be clear, Defendants do not have that information in the form and format requested and do not have access to internal systems or searches that would make the process easier for Defendants than Plaintiff. There is nothing in Defendants' exclusive control that will

allow Defendants to create without undue burden the analysis Plaintiff seeks for her own case.

Defendants are unaware of *any* authority in *any* jurisdiction that would require a narrative response as to hundreds of millions of discrete claims, and Plaintiff cites no such case. Indeed, the authority cited by Plaintiff *supports* Defendants' objection and buttresses the reasonableness of Defendants' Amended Answer. *See* Mtn. at 10. In *Perfect 10 Inc. v. Giganews, Inc.*, the plaintiff complained that the defendant's interrogatory response was deficient because it "failed to link the names and addresses of certain persons to the email addresses" and instead had produced a large number of electronic documents containing that information. *Perfect 10 Inc. v. Giganews, Inc.*, No. 11-cv-7098, 2014 WL 12586247, at *2 (C.D. Cal. June 2, 2014). The court disagreed:

> Defendant does not maintain, in discrete format, the narrative responses which plaintiff had expected to receive…. In the court's experience, parties often wage battles over the feasibility of producing exactly the kind of format of document production which [defendant] here has willingly provided to Plaintiff. [Defendant] provided plaintiff with instructions on how to decrypt and access their electronic files…. [Defendant] identified the method by which its responses may be determined.

*Id.* That is precisely what Defendants have done here. Defendants produced comprehensive, detailed data, which can be sorted, filtered and used for calculations by Plaintiff's expert just as easily as it can be by Defendants.

Indeed, Defendants' documentary and explanatory response is sufficient and no narrative response is required, even according to the authorities cited by Plaintiff. *See*

Mtn. at 10, citing *Perfect 10*, 2014 WL 12586247, at *2 (producing documents with explanation sufficient); *WIMCO, LLC v. Lange Indus., Inc.*, No. 06-cv-3565 (PJS/RLE), 2007 WL 9747496, at *2 (D. Minn. Oct. 2, 2007) (requiring explanation of documents produced pursuant to Rule 33(d) but not requiring narrative response); *cf. Powerhouse Marks, L.L.C. v. Chi Hsin Impex, Inc.*, No. 04-cv-73923, 2005 WL 8154950, at *3 (E.D. Mich. Nov. 15, 2005) (compelling narrative response only after documents produced pursuant to Rule 33(d) were in fact not responsive, and methodology disclosed in interrogatory response did not provide answer to interrogatory). Moreover, Plaintiff has had ample access to Defendants' key personnel through Rule 30(b)(6) depositions and fact depositions to gather any additional information about the data fields, calculation methods or any other information related to the Transaction Data.

### B. Defendants' Amended Responses to Document Request Nos. 25, 26 and 30 Are More Than Sufficient Under the Federal Rules

Plaintiff's Motion also now seeks to compel further responses to three document requests to which Defendants first responded more than 17 months ago. These requests seek Transaction Data, definitions related to the Transaction Data, and "[a]ll Documents necessary to efficiently re-adjudicate all claims" of interest. *See* Request Nos. 25, 26 & 30 (respectively). In the months since their initial response, Defendants have produced over 112 gigabytes of data; crosswalks, data dictionaries, and other explicatory material; and multiple knowledgeable witnesses for deposition. DesLauriers Decl. at ¶¶ 3, 6. Counsel have responded to myriad questions from Plaintiff's counsel. *Id.* at ¶¶ 7-10. Indeed, Defendants even agreed to Plaintiff's request that they provide "Supplemental

Responses" cataloguing all the additional information relevant to these requests that Defendants have already produced. *Id.*, Ex. C. It is unclear what more, if anything, Defendants can do to satisfy Plaintiff. But it is clear that any such effort would be beyond what is required as a matter of proportionality and fairness.

### 1. Request No. 25 ("Prescription Drug Transaction Data")

Request No. 25 seeks "Prescription Drug Transaction Data for Plaintiffs' and the Class' transactions where there was an Overcharge and/or Clawback." Defendants initially objected to this request as overbroad because it included "claims that ha[d] been already dismissed in this action," but agreed to meet and confer once "Plaintiffs ha[d] identified a more limited putative class." 2019 Response to Request No. 25. Defendants proceeded to produce data on 400+ million claims, and engage in numerous meet-and-confer sessions. DesLauriers Decl. at ¶ 3, 7-10. Plaintiff seizes upon the 2019 Response objecting to the scope of the request, arguing that at least some claims data should be produced. This is a red herring. Defendants' Supplemental Response confirms that "Defendants have produced the prescription drug transaction data from October 4, 2010 through January 31, 2020 for Key and National self-funded groups as well as certain fully insured plans," which are the only groups identified to be at issue in this case. *Id.*, Ex. C.

Finally, Plaintiff claims that Defendants have not fully complied with Request No. 25 because "[i]n today's letter, Defendants confirmed that they have not produced plan-variation code information that is necessary to identifying the specific SPD associated with each prescription drug transaction." Mtn. at 15. This mischaracterizes the record. A letter from counsel for the Defendants dated September 8, 2020, confirmed that "[t]o

12

the extent available within the data prescription drug transaction data…these fields have been produced." DesLauriers Decl., Ex. A.  Defendants have produced the data fields that exist. *Id*. at ¶ 3.  Defendants have also produced 36,000 SPDs. *Id*. at ¶ 2.  As Defendants have explained to Plaintiff, information that would tie a particular claim to a particular SPD is not available in the Transaction Data.  Defendants therefore also have produced a series of reports generated by a separate area of the business to help Plaintiff further match claims to SPDs. *Id*. at ¶ 12.

### 2. Request No. 26 (Databases, data elements and dictionaries)

Request No. 26 seeks "[d]ocuments sufficient to identify the databases or sources of Prescription Drug Transactional Data, including all data elements captured, all data dictionaries and mapping Documents necessary to correctly interpret the Prescription Drug Transaction Data…." Again, the response about which Plaintiff complains was issued months before the Transaction Data and related data was produced, and before the numerous meet-and-confers.  Defendants have provided a Supplemental Response, which catalogues the relevant data and information already produced to Plaintiff, and refers to the multiple meet-and-confers in which Defendants provided additional details in response to Plaintiff's questions. DesLauriers Decl., Ex C.  With respect to Plaintiff's overbroad request for "mapping Documents," Defendants have produced data dictionaries and other key, relevant information.  Plaintiff has failed to identify what other information is missing.  Indeed, Plaintiff does not identify with specificity how the response to this Request is deficient in any respect, or how it could be remedied beyond what has already been done.  For that reason alone, the Motion should be denied. *See*

L.R. 37.1; *Haddley,* 2018 U.S. Dist LEXIS 237983, at *7-8.  More importantly, though, the reason Plaintiff cannot specify how it is deficient is because it is not.  Defendants have met their obligations here, and more.

### 3. Request No. 30 ("All Documents" necessary to calculate class claims)

Request No. 30 is a demand for the complete universe of data necessary for Plaintiff to calculate applicable damages.  In this request, Plaintiff seeks to foist its burden to prove its claims onto Defendants, seeking "[a]ll Documents necessary to efficiently re-adjudicate all claims for which Insured were Overcharged to calculate Overcharges on an individual and class basis."  It is Plaintiff's burden to prove her case, including by developing a reasonable, feasible and defensible method for calculating alleged damages.  She cannot shift that burden to Defendants with a discovery request.

Defendants have gone to extraordinary lengths to collect and produce the critical pieces of any damages calculation—in this case, tens of thousands of SPDs and data for over 400 million prescription drug transactions.  DesLauriers Decl. at ¶¶ 2-4.  Defendants have provided detailed information about interpretation of the claims data during meet-and-confer conferences, through interrogatory responses, and through deposition testimony.  *Id*. at ¶¶ 6-10.  Plaintiff has had ample opportunity to develop the evidence Plaintiff and her expert believe is necessary for calculating "Overcharges" using the method they have deemed appropriate.  To the extent this request seeks to force Defendants to divine and produce whatever information Plaintiff may want or need for her theory, it is hopelessly vague.  Plaintiff argues that "Defendants refuse to inform

14

Plaintiffs as to whether there is additional information that Defendants have not produced that they maintain Plaintiff[] needs to calculate damages," Mot. at 16, but it is not Defendants' responsibility to inform Plaintiff how to calculate her alleged damages. Nor is that what Plaintiff even asked for in this Request.

The Request asked for all "documents necessary to efficiently re-adjudicate all claims for which Insured [sic] were Overcharged." Defendants have indicated that it is not possible to actually re-adjudicate claims going back 10 years. To the extent the Request asks for documents necessary to "calculate Overcharges," Defendants have provided the data necessary to calculate "Overcharges" as defined by Plaintiff. Defendants have also provided a data dictionary identifying additional fields available in the prescription drug transaction data, and Plaintiff has not identified any specific additional field she believes is necessary. DesLauriers Decl. at ¶ 6. Finally, Plaintiff does not identify in what way the response to this request is at all deficient, which by itself is fatal to her Motion.

Plaintiff posits that because there are fewer policy numbers in the claims data than in the SPDs, Defendants have not produced all relevant data. Plaintiff's counting of such numbers is not comparing apples to oranges because there could be several for that conclusion. But the parties are continuing to work through these admittedly complicated issues, and Defendants have already agreed to produce additional claims data, if they determine such information is improperly missing, reasonably accessible, and relevant. An order compelling Defendants to produce anything further is unnecessary and unwarranted.

## V. CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' Motion To Compel Further Production of Documents and Responses to Interrogatories.

Dated:  September 25, 2020                               DORSEY & WHITNEY LLP

By: _s/ *Michelle S. Grant*_____
    Steven J. Wells (#0163508)
      wells.steve@dorsey.com
    Michelle S. Grant (#0311170)
      grant.michelle@dorsey.com
    Andrew Holly (#0308171)
      holly.andrew@dorsey.com
    Meghan DesLauriers (#0389034)
      deslauriers.meghan@dorsey.com
    Caitlin L.D. Hull (#0398394)
      hull.caitlin@dorsey.com

50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

*Attorneys for Defendants*