# Exhibit A



MICHELLE S. GRANT
(612) 340-5671
FAX (612) 340-8738
grant.michelle@dorsey.com

September 8, 2020

<u>Via Email</u>

Mathew Jasinski, Esq.
Motley Rice LLC
20 Church Street, 17th Floor
Hartford, CT 06103

      Re:     *Sohmer v. UnitedHealth Group Inc., et al.*, Case No. 18-cv-3191

Dear Mat:

      I write in response to your letter dated August 13, 2020 in the above-referenced matter and as a follow-up to our meet and confer on September 4, 2020.

      As you note, Defendants produced over hundreds of millions of claim lines reflecting prescription drug transactions for all Key and National Account self-funded plans administered by UnitedHealthcare for a nearly 10-year period.  This data was pulled from three different databases, including both active and archived data and took a significant amount of time and effort to pull, process in smaller files in order to transfer, and produce.

      Defendants have also produced: (i) over 36,000 SPDs from United's IDRS system that contain lesser-of-three language; (ii) documents and information to indicate whether the plan sponsor purchased a lesser-of-two or lesser-of-three plan or traditional or pass-thru pricing for prescription drug benefits and PhBit information to indicate the adjudication set-up; and (iii) a list of customers and specific plan names (as indicated in the SPD metadata) with lesser-of-three logic language in the SPD for outpatient prescription drug purchases at retail network pharmacies that Defendants currently understand to have been adjudicated pursuant to lesser-of-two logic.

### A.  Interrogatories 13, 14, and 21

      In Interrogatories 13, 14 and 21, Plaintiffs ask Defendants to provide certain information regarding "each claim in the Prescription Drug Transaction Data."  Responding to such interrogatory requests for hundreds of millions of claim transactions is unduly burdensome, not proportional to the needs of the case, and doing so for each of the hundreds of millions of claims in the transaction data would result in Plaintiffs' interrogatories far exceeding the 25 Interrogatories permitted by the Pretrial Scheduling Order.  In addition, certain information requested in these interrogatories is equally available to Plaintiffs who can review the prescription drug transaction data and other information already produced themselves.

      While Defendants objected to answering hundreds of millions of separate interrogatory requests for each claim in the prescription drug transaction data, Defendants responded to Plaintiffs interrogatories by providing the information available to tie the prescription drug



Mathew Jasinski, Esq.
September 8, 2020
Page 2

transaction data to particular groups or policy numbers and how, in the ordinary course of business, Defendants tie specific information in member eligibility databases to particular benefit plans.  Plaintiffs correctly note that Defendants have not produced information from member eligibility databases as doing so for potentially hundreds of millions of members in the undefined putative class is not available in a reasonably accessible manner.

The transaction data can be tied to a specific policy or group number or employer.  Plaintiffs ask which if any fields provided in the "L2 Adjudication List" or SPD metadata correspond to fields contained in the Claims Data.  Although there may be exceptions, as a general matter, the Policy Number field in the "L2 Adjudication List" corresponds to the "pol_nbr" metadata fields that were provided along with the SPDs produced from UnitedHealthcare's files and should align with the Policy Number (Policy_Number) in the prescription drug transaction data.  The Customer Name in the "L2 Adjudication List" corresponds to "cust_leg_nm" in the SPD metadata fields and should align with the Employer Group field ("Employer_Group_Nm") in the prescription drug transaction data.  We, however, have identified that sometimes the "Group Number" listed in the SPD metadata information is listed as the "Policy Number" in the claims data and vice versa.[1]

If an employer has multiple benefit plan options (and multiple corresponding SPDs), the prescription drug transaction data does not indicate the specific benefit plan option.  Information regarding which plan variation applies to individual members within a specific employer group is available within United's ACIS platform.  ACIS provides details regarding the structure of each customer within the platform, including the plan variation codes or "PVRCs" utilized by that customer in any given year.  Using Huntington Learning Corporation as an example, Defendants can pull a report identifying the PVRC for all members in 2016.  In that report, Defendants can look at two columns – the "PV Plan Variation" and the "RC Reporting Code" and identify that Plaintiff Sohmer's PVRC was 0001.  Then, Defendants can pull an ACIS structural report for Huntington.  In the structural report, Defendants can look at the row associated with the PVRC 0001 and see that that PVRC aligns with the plan name "ASO 2002 Choice Plus PS1 A Mod."  Then, using the SPD metadata previously produced, Defendants can identify the "Choice Plus Plan A" in the alt_pl_name column and thus identify the applicable SPD.  Apart from looking up each member in the member eligibility information database, this is the best information available to Defendants in order to identify the information Plaintiffs seek.  However, running such reports for the thousands of employer groups in the prescription drug transaction data for each of 10 years is unduly burdensome and not proportional to the needs of the case.  Defendants are inquiring, however, into the availability of the PVRC reports (including how far back the information is available) and the burden to pull such reports for the employer groups where the SPDs within United's possession show that some SPDs had lesser-of-two language and some had lesser-of-three language in any given year.[2]

---

[1] This explains the discrepancies noted in footnote 1 of your letter.
[2] In footnote 2, Plaintiffs complain about Defendants' objections to Answer to Interrogatory No. 13. Plaintiffs argue that Defendants "should be able to identify which definition of 'prescription drug charge' (or 'cost') applies to each prescription drug transaction."  Again, doing so for each of the hundreds of



Mathew Jasinski, Esq.
September 8, 2020
Page 3


**B. Calculations**

As to Plaintiffs' repeated requests for counsel to provide information sufficient for Plaintiff to interpret Defendants' transaction data, we have explained that we believe such requests should be through formal discovery rather than informal counsel-to-counsel communications. We, however, respond in turn to each of the bullet points on pages 4-5 of your August 13 letter.

First, As Plaintiffs, note, Defendants produced the Definitions and Possible Values file for the OptumRx data which uses natural language for each field.  The "Attribute Display Name" fields are the ones used in the claims data for the named plaintiffs, which was pulled from the active online reporting database at the time.  OptumRx has identified an OLR Data Dictionary that includes "Attribute Display Name, Definitions, and Possible Values," as well as the corresponding Data Warehouse Table Name and Data Warehouse Column Name.  This data dictionary was produced on September 4, 2020.  In addition, OptumRx has also identified an Integrated Data Warehouse ("IDW") Dictionary which it will produce.  For a handful of fields that cannot be found in the OLR dictionary, these are found in the IDW dictionary.  This additional dictionary is being produced today.

Second, the claims data produced at UNH-Sohmer-00000193 was pulled from the Gopher database at the time and thus does not always line up with the field names from the OptumRx data.  Defendants have separately produced definitions and other information available with respect to each of the fields produced from the Gopher database.  Defendants also provide the additional following information for the categories specifically identified:

- Amount Paid is CLT_DUE_AMT in the OputmRx data
- Claim Status Desc is a description of the CLAIM_STATUS field, which was produced to Plaintiffs (e.g., P = Payable and X= Reversed)
- For the prescription drug transaction data produced (other than the separately produced data for Named Plaintiffs), Defendants did not produce Member Names in order to protect the privacy of non-parties because no class has been certified in this case.
- Patient Pay is APP_PATIENT_PAY_AMT in the OptumRx data.
- Rx Count in the Gopher data is set to "1" on all claim facts because only original claims or their adjustments are loaded into Gopher.  This Rx Count field is not available in the OptumRx data, but we have produced the fields that indicate whether it was a payable or reversed claim (CLAIM_STATUS) as well as Claim

---

millions of prescription drug transactions is unduly burdensome and not proportional to the needs of the case.  Defendants stand by their objections.  Plaintiffs have neither clarified their request nor otherwise addressed Defendants' objections.  It is unclear whether Plaintiffs are seeking information about how the claim was adjudicated, what definition was in the SPD, or some other information.  In any event, Defendants have produced the SPDs and claims data that permit Plaintiffs to make these assessments themselves.



Mathew Jasinski, Esq.
September 8, 2020
Page 4

Sequence Number (CLAIM_CLAIM_SEQ_NUMBER) and Claim Counter (CLAIM_CNTR).

Third, you ask Defendants to identify which fields in the named-plaintiffs data correspond to the fields in the broader prescription drug transaction data from OptumRx. We understand the Approved Amount Paid field in UNH-Sohmer-00000193 is equivalent to the APP_DUE_AMT field in the OptumRx data. The APP_PATIENT_PAY_AMT, CLR_INGRED_COST_PAID, CLR_SALES_TAX_PAID, and NDC_NUMBER_11_DIGIT are also equivalent to corresponding fields in the OptumRx data.

As to your suggestion that you might seek to reopen the Optum 30(b)(6) deposition, please know that we have strong grounds to and will oppose any such effort. Plaintiffs "chose to go ahead with the deposition of [Optum's 30(b)(6) witness] early in the discovery period, and in spite of the ongoing . . . production of various documents . . . knowing full well that the eventual production of such documents might produce new information that [Plaintiffs] might wish to ask [the 30(b)(6) witness] about." *EEOC v. Prod. Fabricators, Inc.*, 285 F.R.D. 418, 423 (D. Minn. 2012) (denying request to reopen 30(b)(6) deposition). Where a party makes such "strategic decision[s]" about its deposition schedule, courts deny requests to reopen depositions. *Id.* at 422-23. This is particularly true where—as here—the deposing party did not reserve the right to reopen the deposition on the record. *See id.*; *Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-cv-2081 (RHK/LIB), 2017 U.S. Dist. LEXIS 222472, at *43 (D. Minn. Mar. 3, 2017) ("Here, there is no indication in the record that either party, much less both parties, understood at the completion of the first 30(b)(6) deposition that another such deposition further exploring the topics available on that day was forthcoming."). In addition, Plaintiffs had the opportunity to examine the Optum 30(b)(6) witness on the data dictionary and certain claims data and yet did not ask many of the same questions that you continue to seek informally from counsel. Plaintiffs have also served numerous Requests for Admissions relating to fields in the prescription drug claims data. We are willing to meet and confer on this issue if there is a reasonable and limited set of identified questions for the Optum 30(b)(6) that you believe are necessary. As you know, Mr. Vesledahl (the previously designated Optum 30(b)(6) witness) is also being deposed as a fact witness on September 29 we will object to any attempt to reopen the 30(b)(6), unless Plaintiffs engage in a meet and confer and we agree on a reasonable set of questions prior to September 29.

Fourth, as to the 37 fields Plaintiffs indicate were not defined in the definitions and Possible Values file, those can be found in the additional data dictionaries produced.

Fifth, you note that there are nearly 250 fields in the Definitions and Possible Values file that are not in the Claims Data. OptumRx did not pull all fields listed as some fields are not available in either the archived or current data, numerous fields are not used or populated in the ordinary course of business, and numerous fields are not relevant to the claims at issue. Pulling all fields for hundreds of millions of prescription drug transactions would be unduly burdensome, overly broad, and make the transaction data even more unwieldy. Defendants have pulled and



Mathew Jasinski, Esq.
September 8, 2020
Page 5

produced the fields necessary for Plaintiffs' requested categories and calculations and Plaintiffs have not identified any additional specific field they believe is necessary that has not been produced.

      <u>Sixth</u>, with respect to the Medco data, Defendants' position is that any claims from 2010-2013 in the Medco data are well outside any potential applicable statutory or contractual limitations period and production of additional information for further discovery regarding this time period is not proportional to the needs of the case.  You have asked us to identify which fields in the Medco Data are equivalent to fields in the OptumRx data.  Defendants do not have a cross-walk to produce that matches fields between the two data sets.  UHC produced descriptions available from the data dictionary for the Medco claim fields that can be used—to the extent possible—to compare to those in the OptumRx data.

      You also ask Defendants to provide fields necessary to (1) limit claims to retail network pharmacies; (2) match claims data to plan language; and (3) calculate (a) the difference between the amount charged to the customer and the negotiated rate (Spread) and (b) the amount, if any, that was recouped by Defendants in "clawbacks."  To the extent available within the data prescription drug transaction data from OptumRx or UHC's Gopher database (for Medco), these fields have been produced.

      Finally, in response to the last three paragraphs in your letter, Defendants respond as follows:

      It is Defendants' position that a full readjudication of claims would be necessary if Plaintiffs were able to prove liability.  It is also Defendants' contention that an actual readjudication of claims going back ten years is not possible.  It is also not Defendants' obligation to inform Plaintiffs how to calculate alleged damages or what information is needed.  Defendants have produced the prescription drug transaction data and Plaintiffs have not indicated any specific additional information they believe is needed to calculate damages.

      As to historic accumulator information for both deductibles and out of pocket maximums, Defendants provided those fields available in the prescription drug transaction data, but that information is not always maintained in RxClaim as the accumulators often are for both prescription drugs and medical claims.  Defendants are inquiring as to what data is maintained for what period of time and whether it is reasonably accessible to collect and produce and hope to have additional information to respond this week.

      Sincerely,

Michelle S. Grant

# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SAMANTHA SOHMER, Individually and on Behalf of All Others Similarly Situated, | Case No. 18-cv-03191 (JNE/BRT) |
| Plaintiff, | |
| vs**.** | **DEFENDANTS' SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 2** |
| UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, OPTUM, INC., and OPTUMRX, INC. , | |
| Defendants. | |

## INTRODUCTION

Defendants UnitedHealth Group Incorporated, UnitedHealthcare Services, Inc.; UnitedHealthcare Insurance Company; Optum, Inc.; and OptumRx, Inc. (collectively, "Defendants") (UnitedHealthcare Services, Inc. and UnitedHealthcare Insurance Company are collectively, "United"), by counsel, and pursuant to Federal Rule of Civil Procedure 33, hereby make the following objections and set forth the following supplemental answers to Plaintiff Samantha Sohmer's Interrogatory No. 2 from Plaintiff's First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS

1.     Defendants object to the Interrogatories to the extent that they seek discovery beyond that relevant to the named Plaintiff's individual claims, especially insofar as the Court has not certified the case for class treatment.

2.      Defendants object to the "Relevant Period" of time as overbroad, causing the Interrogatories to seek information that is irrelevant and imposing an undue burden on Defendants. The Interrogatories seek information from October 4, 2010 to the present, yet any possible statute or contractual limitations period for the remaining claims would not extend back to 2010. It appears that Plaintiff seeks to define the "Relevant Period" based upon the initial filing in *In re UnitedHealth Group PBM Litigation*, No. 16-cv-03352 (D. Minn.) (the "Previous Action"). The Previous Action, however, was dismissed without prejudice. Such a dismissal does not toll the statute of limitations or any contractual limitations period and Plaintiff has provided no authority for such tolling. Further, Plaintiff has not provided a legal basis for a six-year limitations period for claims or that of the putative class.

3.      Defendants object to the Interrogatories to the extent that they seek information regarding non-ERISA plans given Plaintiff Fellgren's dismissal of her claims and Count II in this Action.

4.      To the extent that any Interrogatory seeks production of: (a) information which is readily available to Plaintiff from her own records or (b) the identification or production of documents or information that Plaintiff already has in her possession, where the burden of collecting or compiling such documents or information is the same for all parties, Defendants object on the grounds that the burden of deriving or ascertaining such information and/or documents is substantially the same for Plaintiff as for Defendants and, therefore, such Interrogatories are unduly burdensome, go beyond any legitimate need for discovery, and exceed the scope of discovery.

5.      Defendants object to the Interrogatories and the instructions thereto to the

extent they seek to impose obligations beyond those required by the Federal Rules of

Civil Procedure.

6.      Defendants state that nothing herein shall be construed as an admission by

Defendants as to the relevance or admissibility at trial of any document or information

that Defendants provide as a response to the Interrogatories.

7.      Defendants will make reasonable efforts to respond to each Interrogatory,

to the extent the Interrogatory has not been objected to, as Defendants understand and

interpret the Interrogatory.  In the event that Plaintiff subsequently asserts an

interpretation of an Interrogatory that differs from that of Defendants, Defendants reserve

the right to amend and/or supplement their Response, but undertake no obligation to do

so.

8.      Defendants are continuing to gather information and reserve the right to

supplement, revise, correct, clarify, or amend any of the following answers or objections.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 2

**INTERROGATORY NO. 2:**  Please identify each claim adjudicated during the
Relevant Period for which a participant paid a Cost Share that exceeded the amount paid
or credited to the pharmacy for a prescription drug when the corresponding SPD provided
for Lesser of Three Logic and for each such claim provide the (a) date prescription was
filled; (b) patient's name; (c) all claim identification codes and numbers; (d) all
member/participant identification codes and numbers; (e) drug name; (f) pharmacy name;
(g) pharmacy identification code and number; (h) average wholesale price; (i) usual and
customary charge; (j) drug tier; (k) applicable copayment or coinsurance amount under
the applicable plan for the respective drug tier; (l) all ingredient costs; (m) all dispensing
fees; (n) all sales tax amounts; (o) copayment amount paid; (p) coinsurance amount paid;

(q) amount paid toward deductible; (r) remaining balance of deductible after payment of claim; (s) amount paid to pharmacy; (t) funding arrangement; and (u) claim status.

**SUPPLEMENTAL ANSWER:**  Defendants reassert their objections to the definitions of "Relevant Period," and "Cost Share" as set forth above in the General Objections.  Defendants further object to this interrogatory on the grounds that it is overly broad and unduly burdensome, considering the parties' relative access to relevant information, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit, particularly because it purportedly requires Defendants to identify "each claim" and certain information contained within "each such claim."  Doing so for the over 400 million prescription drug transaction records produced would be unduly burdensome and far exceed the number of interrogatories permitted under the Federal Rules of Civil Procedure and the Pretrial Scheduling Order.  Defendants further object to this interrogatory on the grounds that it is vague, ambiguous, and lacks particularity because of the undefined terms and ambiguous phrases "all claim identification codes and numbers," "all member/participant identification codes and numbers," "applicable copayment or coinsurance amount under the applicable plan for the respective drug tier," and "all ingredient costs."  Defendants also object to this interrogatory to the extent it seeks individual patient health information (PHI) or any other information protected by the Health Insurance Portability and Accountability Act of 1996 (HIPAA).  Defendants reserve the right to redact and/or not produce any identifiable information regarding any person, other than the Named Plaintiff, in the data in order to protect his or her privacy

4

and because no class has been certified in this case. Defendants further object to this interrogatory because discovery is ongoing, and therefore reserve the right to supplement, revise, correct, clarify, or amend their answer to this interrogatory.

Subject to and without waiving the foregoing objections, Defendants respond as follows: After reasonable investigation, the information requested in the interrogatory is not maintained by Defendants in the ordinary course of business in the form and format requested by Plaintiff. Defendants cannot simply run a report to provide the requested information, i.e., a listing or other compilation of each claim (e.g., by claim number) in the prescription drug transaction data produced by Defendants where the summary plan description contains specific language. To the extent that the information sought by this Interrogatory may be able to be ascertained from the prescription drug transaction data and the Summary Plan Descriptions that Defendants have produced in this Action, the burden of locating and identifying such information is the same for Plaintiff as Defendants and Defendants direct Plaintiff to those data and documents pursuant to Fed. R. Civ. P. 33(d).

Plaintiff asks Defendants to identify "each claim" where "a participant paid a Cost Share that exceeded the amount paid or credited for a pharmacy for a prescription drug when the corresponding SPD provided for Lesser of Three Logic." Certain information sought by this Interrogatory – namely whether the summary plan description in United's files contains the "Lesser of Three Logic" – can be ascertained from the summary plan descriptions produced by Defendants. Defendants have produced the summary plan descriptions in its possession from 2010-2018 that include the "lesser-of-three" language

as set forth in prior correspondence between the parties and the agreed upon search terms used.  The burden of locating and identifying such information is the same for Plaintiff as Defendants, and thus Defendants direct Plaintiff to the summary plan descriptions produced pursuant to Federal Rule of Civil Procedure 33(d).  Defendants note that while United offers customers the option of using its draft summary plan descriptions, the plan sponsors are ultimately responsible for the content of the summary plan description and may make changes once the draft template summary plan description is provided to them. Defendants do not always have in their possession the final summary plan description that plan sponsors may provide to the members or know when or if the plan sponsor provided a summary plan description or updated summary plan description at any given time.  The summary plan descriptions produced in this litigation are those maintained in Defendants' possession.

Certain other of the information sought by this Interrogatory may be ascertained from the prescription drug transaction data produced by Defendants.  Defendants have produced the prescription drug transaction data from October 4, 2010 through January 31, 2020 for Key and National self-funded groups as well as certain fully insured plans.  *See* UNH-06683000 – 06683084, UNH-SOHMER07043914 – 07043952 and UNH-SOHMER07197757 - 07197760.  The burden of locating and identifying such information is the same for Plaintiff as Defendants, and thus Defendants direct Plaintiff to the prescription drug transaction data produced pursuant to Federal Rule of Civil Procedure 33(d).

For the claims when Medco was the pharmacy benefit manager ("Medco claims"),

the transaction data produced at UNH-SOHMER07043914 - 07043952 includes the

following with respect to each of the subparts of this Interrogatory:

(a) Adjudicated date (ADJUDICATED_DATE_CYMD);

(b) Pursuant to their objections, for the prescription drug transaction data produced
(other than the separately produced data for Named Plaintiff), Defendants did
not produce patient names in order to protect the privacy of non-parties
because no class has been certified, but have produced member identification
numbers as set forth in (d).  Plaintiff has not indicated the need for patient
names;

(c) Claim Fact ID (CLAIM_FACT_ID) and a Prescription Number (RX_NBR);

(d) Patient ID (PAT_ALTERNATIE_ID);

(e) NDC Number (NDC_NBR), Manufacturer Name (MFR_NM), generic name
(MS_GPI_NAME), and Brand Name (Brand_NM);

(f) Pharmacy Name (PHAR_NM);

(g) Pharmacy NPI Number (PHAR_NPI_NBR);

(h) Inferred AWP (INFERRED_AWP);

(i) Usual & Customary Amount (UC_AMT);

(j) Client Cost Tier (CLIENT_COST_TIER);

(k) As noted in their original Objections dated November 6, 2019, Defendants are
unclear what Plaintiff means to request in subsection (k), but do not believe
data is available other than the copayment or coinsurance amount paid and
Plaintiff has not clarified or requested additional information or fields in

addition to those produced on April 23 and May 14, 2020;

(l) Calculated Ingredient Cost (CALC_INGRED_COST) and Ingredient Cost Paid
(ING_CST_PD_AMT);

(m) Professional Dispensing Fee (PROFDISP_FEE) and Client Contracted
Dispensing Fee (CLIENT_CON_DISP_FEE);

(n) Sales Tax Amount (SALES_TX_AMT);

(o) Copay Amount (COPAY_AMT);

(p) Coinsurance Amount (COINS_AMT);

(q) Deductible Amount (DED_AMT);

(r) Information regarding the remaining deductible amount is not available within
in the system where the Medco claims data is maintained;

(s) PAID Amount (PAID_AMT) plus Copay Amount (COPAY_AMT) and
Deductible Amount (DED_AMT);

(t) Funding Indicator (FUND_IND);

(u) There is no field available, but for the Medco claims only the final paid claims
are available.

For the claims when OptumRx was the pharmacy benefit manager ("OptumRx
claims"), the transaction data produced at UNH-06683000 – 06683084 and UNH-
SOHMER07197757 – 07197760 includes the following with respect to each of the
subparts of this Interrogatory:

(a) Filled Date (FILLED_DATE);

(b) Pursuant to their objections, for the prescription drug transaction data produced

(other than the separately produced data for Named Plaintiff), Defendants did not produce patient names in order to protect the privacy of non-parties because no class has been certified, but have produced member identification numbers as set forth in (d).  Plaintiff has not indicated the need for patient names;

(c) Claim Number (CLAIM_NUMBER);

(d) Member ID (MEMBER_ID);

(e) NDC Label Name (NDC_LABEL_NAME), GPI Label Name (GPI_LABEL_NAME), GPI General Name (GPI_GENERIC_NAME); and NDC Number (NDC_NUMBER_11_DIGIT);

(f) Pharmacy Legal Name (PHARMACY_LEGAL_NAME);

(g) Pharmacy NPI (PHARMACY_NPI);

(h) Plaintiff has not specific defined or identified the "average wholesale price" requested, but the following fields are available and have been provided: AWP_UNIT_COST_MEDISPAN_PUBLISHED, AWP_EXTENDED_COST_CLAIM_LEVEL, AWP_UNIT_COST, AWP_UNIT_COST_MEDISPAN_ADJUSTED, AWP_UNIT_COST_NDC, AWP_UNIT_EXTENDED_INDICATOR, AND AWP_UNIT_PUBLISHED_INDICATOR;

(i) Submitted Usual and Customary (SBM_USUAL_CUSTOMARY)

(j) Formulary Tier (FORMULARY_TIER);

(k) As noted in their original Objections dated November 6, 2019, Defendants are

9

unclear what Plaintiff means to request in subsection (k), but do not believe

data is available other than the copayment or coinsurance amount paid and

Plaintiff has not clarified or requested additional information or fields in

addition to those produced on April 23 and May 14, 2020;

(l) Approved Ingredient Cost (APP_INGRED_COST_PAID) and Client

Ingredient Cost (CLR_INGRED_COST_PAID or

CLT_INGRED_COST_PAID);

(m) Approved Dispensing Fee (APP_DISPENSING_FEE) and

DISPENSING_FEE_CLAIM_LEVEL;

(n) Sales tax (CLR_SALES_TAX_PAID or CLR_SALES_TAX_PAID and

APP_SALES_TAX_PAID);

(o) APP_COPAY_AMT;

(p) CO_INSURANCE_AMT;

(q) APP_ATTRIB_TO_DED_AMT;

(r) FAM_DEDUCTIBLE_REM_AMT and IND_DEDUCTIBLE_REM_AMT,

where available;

(s) APP_DUE_AMT or APPROVED_AMOUNT_PAID_CLAIM_LEVEL is the

amount paid by OptumRx to the pharmacy.

APPROVED_AMOUNT_PAID_CLAIM_LEVEL or APP_DUE_AMT plus

APP_PATIENT_PAY_AMT is the total amount reimbursed to the pharmacy;

(t) FUNDING_ARRANGEMENT;

(u) CLAIM_STATUS.

As to subjection (r) regarding remaining deductible amounts, as noted in their original

Answer, the remaining balance of deductible after payment of claim is not generally

available within the database systems that house the claims data for either Medco claims

or OptumRx claims.  Members may have a pharmacy deductible, a medical deductible or

a combined deductible.  In addition to their individual deductible, they may also have a

family deductible.  Defendants are continuing to investigate what information is available

in any separate data warehouse, whether it is reasonably accessible, and the burden to

pull data for potentially millions of members over a 10-year period.

Regarding the above identified fields in subparts (a)-(u), Defendants have also

produced data dictionaries or available definitions providing further information

regarding each of these fields as well as the over 100 additional data fields produced, as

well as a field list comparison chart where field names between the archived pre-2015

OptumRx data and the current data may differ.  (*See* UNH-Sohmer-06464226, 07192095,

07197756 and 07227891).

To identify the "Cost Share" paid by a participant, Plaintiff can look at the fields

in (o), (p), and (q) as well as the APP_PATIENT_PAY_AMT in the OptumRx claims or

by adding the COPAY_AMT and DED_AMT fields together in the Medco claims.

For OptumRx claims, claims where a participant paid a Cost Share that exceeded the

amount paid or credited to the pharmacy can be identified by a negative amount in the

APP_DUE_AMT field for final, non-reversed claims.  For Medco claims, Defendants

were not the pharmacy benefit managers and did not hold the contracts with the

pharmacies.  However, based on United's knowledge and information, for Medco claims

there are no claims adjudicated during the "Relevant Period" for which a participant paid a Cost Share that exceeded the amount paid or credited to the pharmacy because there was no recoupment during that period.

As stated above, additional information requested in the Interrogatory is not maintained by Defendants in the ordinary course of business in the form and format requested by Plaintiff, i.e., a listing or other compilation of each claim (e.g., by claim number) in the prescription drug transaction data produced by Defendants where the summary plan description contains specific language.  Defendants can, however, link specific prescription drug transactions to specific groups (e.g., by Employer Group Name (Employer_Group_Nm) or Policy Number (Policy_Number)) as well as specific benefit options within each group (i.e., Plan_Variation, Client_Benefit_Code, and Plan_Code in the OptumRx data or GRP_Subdiv_1, Benefit_Plan_Nbr, and Plan_Code in the Medco data).  If an employer has multiple benefit plan options (and multiple corresponding summary plan descriptions), the prescription drug transaction data does not indicate the specific benefit plan option.  Information regarding which plan variation applies to individual members within a specific employer group is available within United's ACIS platform.  ACIS provides details regarding the structure of each customer within the platform, including the plan variation codes or "PCs" utilized by that customer in any given year.  Thus, Defendants are able to confirm whether a particular transaction by claim number (i.e., RX_NBR or CLAIM_NUMBER) in the prescription drug transaction data produced by Defendants was pursuant to a particular benefit plan and are able to match it to the summary plan descriptions in United's system.  This, however, is a

manual process to review information across several data sources and documents. It has not been performed, and it would be unduly burdensome, costly and time-consuming to perform for each of the over 400 million prescription drug transactions in the data produced by Defendants.

Using Huntington Learning Corporation as an example, Defendants can pull a report identifying the PVRC for all members in 2016. In that report, Defendants can look at two columns – the "PV Plan Variation" and the "RC Reporting Code" and identify that Plaintiff Sohmer's PVRC was 0001. Then, Defendants can pull an ACIS structural report for Huntington Learning Corporation. In the structural report, Defendants can look at the row associated with the PVRC 0001 and see that that PVRC aligns with the plan name "ASO 2002 Choice Plus PS1 A Mod." Then, the cover of the SPD indicates "Choice Plus Plan A." (*See, e.g.*, UNH-Sohmer-00594577.) Similar information may also be found in in the alt_pl_name column of the SPD metadata. In reviewing the SPD, one can confirm whether the SPD included the "Lesser of Three Logic" language as defined by Plaintiff. Plaintiff can also identify all claims for members with PVRC 0001 by locating the Member IDs in the prescription drug transaction records or by identifying the claims through the PLAN_VARIATION field = 0001 for Huntington Learning Corp. claims. Again, this is a manual process to review information across several data sources and documents and Defendants have not performed this across all of the PVRC reports and structural reports produced to Plaintiff. The process may differ slightly among customers based on naming conventions and how their benefit plans are designed.

Apart from looking up each member in the member eligibility information

13

database, this is the best information available to Defendants in order to identify the information Plaintiff seeks.  However, running such reports for the thousands of employer groups in the prescription drug transaction data for each of 10 years is unduly burdensome and not proportional to the needs of the case.  Defendants produced the PVRC reports and structural reports available from 2014 through 2020 for the employer groups where the summary plan descriptions within United's possession show that some summary plan descriptions had lesser-of-two language and some had lesser-of-three language in any given year.  These reports can be found at UNH-Sohmer-07229731-07229876.  Defendants are working to gather additional reports that are available going back to 2010 and will produce those by October 9, 2020.  Defendants note that not all reports may be available for groups going back to 2010.

For all other employer groups for a given year for a Cust_Leg_Nm listed on the "List of Plans Produced to Plaintiffs on 5-5-20" (referred to by Plaintiff as the "L2 Adjudication List"), based on discovery to date United has identified that all summary plan descriptions in its possession for that employer group in that given year contained lesser-of-three language.  To identify the specific prescription drug transactions for these groups, the prescription drug transaction data produced provides group number (Medco claims) or policy number (OptumRx claims), and employer group name (GRP_NM, EMPLOYER_GROUP_DESC or EMPLOYER_GROUP_NM) to correspond to the summary plan descriptions within United's system which have also already been produced.  Again, using Huntington Learning Corporation as an example, the summary plan descriptions produced can be identified in the summary plan description metadata

provided by searching for Huntington Learning Corporation as the Cust_Leg_Nm, and/or

378509 and 714898 as the pol_nbr or contr_nbr.  To locate prescription drug transaction

data for Huntington Learning Corporation members, one can search the transaction data

for Huntington Learning Corp as the GROUP_NM, EMPLOYER_GROUP_DESC or

EMPLOYER_GROUP_NM) or the Group Number or Policy Number 714898 and/or

378509.


Dated:  September 24, 2020                    DORSEY & WHITNEY LLP

                                              By *s/ Michelle S. Grant*
                                                  Steven J. Wells (#163508)
                                                  wells.steve@dorsey.com
                                                  Michelle S. Grant (#0311170)
                                                  grant.michelle@dorsey.com
                                                  Andrew Holly (#308171)
                                                  holly.andrew@dorsey.com
                                                  Meghan DesLauriers (#0389034)
                                                  deslauriers.meghan@dorsey.com
                                                  Caitlin L.D. Hull (#0398394)
                                                  hull.caitlin@dorsey.com
                                              50 South Sixth Street, Suite 1500
                                              Minneapolis, MN 55402
                                              Telephone:  (612) 340-2600
                                              Facsimile:  (612) 340-2868

                                              *Attorneys for Defendants*


**VERFICATION TO FOLLOW**

# Exhibit C

## UNITED STATE DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| SAMANTHA SOHMER, Individually and on Behalf of All Others Similarly Situated, | Civil File No. 18-cv-3191 (JNE/BRT) |
| Plaintiff, | **DEFENDANTS' SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS** |
| vs. | |
| UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, OPTUM, INC., and OPTUMRX, INC., | |
| Defendants. | |

## INTRODUCTION

Defendants UnitedHealth Group Incorporated, UnitedHealthcare Services, Inc., United Healthcare, Inc., UnitedHealthcare Insurance Company, Optum, Inc., and OptumRx, Inc. (collectively, "Defendants"), by counsel, and pursuant to Federal Rule of Civil Procedure 34, hereby make the following supplemental responses and objections to Plaintiff Samantha Sohmer's ( "Plaintiff") First Set of Requests for Production to Defendants Nos. 25, 26 and 30 (the "Requests").

## GENERAL OBJECTIONS

1.      Defendants object to the relevant time period as overbroad, causing the Requests to seek documents that are themselves irrelevant and impose an undue burden on Defendants.  The Requests seek documents from October 4, 2010 to the present, yet any possible applicable statute of limitations for the remaining claims is—at most—six

years and, thus, would only go back to July 30, 2012.  It appears Plaintiff is seeking to date the "Relevant Period" back to the initial filing in the "Previous Action" (as defined in Plaintiff's Requests).  But, the Previous Action was dismissed without prejudice.  Such a dismissal does not toll the statute of limitations and Plaintiff has provided no authority for such tolling.  Further, Plaintiff has not provided a legal basis for expanding a six-year limitations period for either Plaintiff's claims or that of the putative class.

2.    Optum, Inc. and OptumRx, Inc. object to the definition of "Optum" as overly broad, causing the Requests to impose an undue burden on Defendants, and causing the Requests to seek irrelevant documents.  Optum, Inc. and OptumRx, Inc. also object to any definition of "Optum" that includes any of its attorneys, to the extent such definitions bring documents protected by attorney-client privilege and/or the work product doctrine within the scope of any Request.  For the purpose of Defendants' responses to the Requests, the term "Optum" will mean Optum, Inc. and OptumRx, Inc., excluding any other parents, affiliates, or subsidiaries.

3.    UnitedHealth Group Incorporated, UnitedHealthcare, Inc., United Healthcare Services, Inc., and UnitedHealthcare Insurance Company object to the definition of "UnitedHealth Group" as overly broad, causing the Requests to impose an undue burden on United, and causing the Requests to seek irrelevant documents. UnitedHealth Group Incorporated, UnitedHealthcare, Inc., United Healthcare Services, Inc., and UnitedHealthcare Insurance Company also object to the definition of "UnitedHealth Group" that includes any of its attorneys, to the extent such definitions bring documents protected by attorney-client privilege and/or the work product doctrine

within the scope of any Request.  For the purpose of Defendants' responses to the

Requests, the term "Defendants" will mean UnitedHealth Group Incorporated,

UnitedHealthcare, Inc., United Healthcare Services, Inc., United Healthcare Insurance

Company, Optum, Inc. and OptumRx, Inc., excluding any other parents, affiliates or

subsidiaries.  For the purpose of Defendants' responses to the Requests, the term

"United" will mean UnitedHealthcare, Inc., United Healthcare Services, Inc., and United

Healthcare Insurance Company.

4.     Defendants object to the definition of "UnitedHealth Group PBMs" or "its

PBMs" as overly broad, unduly burdensome, vague, and ambiguous to the extent that the

terms are defined to refer to "PBMs utilized by UnitedHealth Group to administer

prescription drug benefits."  By this definition, Plaintiff fails to specify the particular

entities that constitute the "PBMs."  For the purpose of Defendants' responses to the

Requests, Defendants have interpreted "UnitedHealth Group PBMs" and "its PBMs" to

mean only OptumRx, Inc., Medco Health Solutions, and Express Scripts, Inc.

5.     Defendants object to the definition of "Coinsurance Overpayment" as

inaccurate.  The term "coinsurance" is defined in each individual member's plan

documents.  Defendants further object to the use of the term as implying that any

coinsurance payment pursuant to the provisions of an individual members' plan was an

"overpayment."

6.     Defendants object to the definition of "Cost-Sharing" as inaccurately

describing a contractual arrangement between "Insureds" (as defined in the Requests) and

"UnitedHealth Group" (again, as defined in the Requests).  The terms and requirements

3

regarding any cost-sharing, copayment, coinsurance and/or deductible are set forth in each individual member's plan documents.

7.     Defendants object to the use of the term "Overcharges" as implying that any "Coinsurance Overpayment" or "Spread" (as defined by the Requests) was an "overcharge" pursuant to the terms of the individual member's plan terms.

8.     Defendants object to the definitions of "ESI" and "Structured Data" as overly broad, vague, and ambiguous.  Defendants object to the definition of "Participating Pharmacies" as overly broad and inaccurate.  Relevant to the claims at issue in this case are purchases of outpatient prescription drugs at a retail "Network Pharmacy," which term is defined in each individual member's plan documents.  For the purpose of Defendants' responses to the Requests, Defendants use the term "Network Pharmacy" as defined in the applicable plan documents for Plaintiff.

9.     Defendants object to the definition of "Spread" as not consistent with the use of the term by Defendants in the ordinary course of business.  However, for the purpose of Defendants' responses to the Requests, Defendants will use the term as defined by Plaintiff.

10.     Defendants object to the definition of "Prescription Drug Transaction Data" as vague, ambiguous, overly broad, and unduly burdensome to the extent that it seeks "all information relevant to a prescription drug transaction" and purports to identify and request data fields not relevant to the claims at issue, not available or not used in the ordinary course of business by Defendants or which would require collection of data from multiple sources, databases and warehouses to the extent not available from data

from the system where the transactions were adjudicated.  Defendants further object to

the definition of "Prescription Drug Transaction Data" to the extent it calls for data fields

not relevant to Plaintiff's claims in this action.

11.     Defendants object to the Requests and instructions to the extent they seek to

impose obligations beyond those required by the Federal Rules of Civil Procedure.

12.     Defendants will not produce documents or information protected from

disclosure by the attorney-client privilege or the attorney work-product doctrine.  If any

documents are withheld from production on the basis of any such privilege, other than

those excluded by the parties pursuant to the Order Regarding Production of

Electronically Stored Information and Hard Copy Documents (ECF 59) (the "ESI

Protocol"), Defendants will provide a privilege log.  Defendants object to the instructions

for the preparation of a privilege log as such instructions are inconsistent with the ESI

Protocol.  Defendants will provide a privilege log in accordance with the ESI Protocol.

13.     Defendants object to the Requests to the extent that they seek information

regarding non-ERISA plans given Plaintiff Fellgren's dismissal of her claims and Count

II in this Action.

14.     Defendants are continuing to gather information and reserve the right to

supplement, revise, correct, clarify, or amend any of the following responses or

objections.

## SUPPLEMENTAL RESPONSES TO DOCUMENT REQUEST NOS. 25, 26 AND 30

**DOCUMENT REQUEST NO. 25:**  All Prescription Drug Transaction Data for Plaintiff's and the Class' transactions where there was an Overcharge and/or Clawback.

**SUPPLEMENTAL RESPONSE:**  Defendants reassert their objections to the definitions of "Relevant Time Period," "Overcharges," "Prescription Drug Transaction Data," and each of the other defined terms used therein as set forth above in the General Objections.  Defendants further object to this Request to the extent it is duplicative of Request No. 9.  Defendants also object to the extent the Request seeks data that is not relevant to any claims or defenses in this action.  For example, consistent with the Court's order on Defendants' motion to dismiss in the Previous Action and the Stipulation for Partial Dismissal (ECF 63) and the corresponding Order (ECF 68), Plaintiff has dismissed all claims for transactions under prescription drug benefit plans that describe the member contribution amount as the lower of (1) the applicable Copayment and/or Coinsurance or (2) the network pharmacy's U&C (*i.e.*, "lesser-of-two" plans).  Yet, this Request, as written, seeks information regarding prescription drug transactions pursuant to such plans.  The Request is also irrelevant to the extent it seeks information regarding transactions beyond purchases of outpatient prescription drugs at retail Network Pharmacies.

Subject to and without waiving these objections, and pursuant to meet and confers with counsel for Plaintiff since Defendants' original responses and objections, Defendants have produced the prescription drug transaction data from October 4, 2010 through January 31, 2020 for Key and National self-funded groups as well as certain fully

6

insured plans.  *See* UNH-06683000 – 06683084, UNH-SOHMER07043914 – 07043952 and UNH-SOHMER07197757 – 07197760.  Defendants also incorporate their Supplemental Answer to Interrogatory No. 2.  Defendants state that the accumulated deductible and remaining deductible does not appear to always be available in the databases from which the prescription drug transactions were collected.  Defendants are investigating the location of such information, the time period for which it may be available, whether it is reasonably available and the burden of collection for all of the hundreds of millions of members for which the prescription drug transactions were pulled.  Defendants will continue to meet and confer with Plaintiff on this issue.

Prescription drug transaction data for other benefit plans insured or administered by Defendants will be withheld on the basis of Defendants' objections.

**DOCUMENT REQUEST NO. 26:**  Documents sufficient to identify the databases or sources of Prescription Drug Transactional Data, including all data elements captured, all data dictionaries and mapping Documents necessary to correctly interpret the Prescription Drug Transaction Data; all decoding Documents that facilitate the translation of values contained in the Prescription Drug Transaction Data; and mapping Documents or datasets connecting values in previous periods to their equivalent counterparts, to the extent that codes or values have changed over time, as the result of a database platform shift or redesign.

**RESPONSE:**  Defendants reassert their objection to the definition of "Prescription Drug Transaction Data," as set forth above in the General Objections. Defendants further object to this Request as overly broad and seeking documents not relevant to any claims or defenses.  The Request for "all data elements captured, all data dictionaries and mapping Documents," "all decoding Documents," and "mapping Documents or datasets" seeks documents and information not relevant to the claims of

defenses in this action.  In addition, the terms "data dictionaries," "mapping," and "decoding" are vague and ambiguous so as to make a response impossible without speculation as to the meaning of these terms.  Moreover, as written, the Request could be read to seek all drafts and communications about such "decoding" or "mapping" documents, including emails from Defendants' employees regarding the prescription drug transaction data.  Searching for such emails would require an extensive search and would not likely generate information relevant to the claims or defenses in this matter.

Subject to and without waiving these objections, Defendants have produced the prescription drug transaction data from October 4, 2010 through January 31, 2020 for Key and National self-funded groups as well as certain fully insured plans.  *See* UNH-06683000 – 06683084, UNH-SOHMER07043914 – 07043952 and UNH-SOHMER07197757 – 07197760.  Defendants have also produced an OLR Data Dictionary, an Integrated Data Warehouse Dictionary, a field list comparison chart to identify and connect archived pre-2015 OptumRx data and current OptumRx data and a data dictionary that provides information regarding the field names and descriptions for the transactions during the time period that Medco Health Solutions was the pharmacy benefit manager that were collected from the Gopher database.  *See* UNH-Sohmer-06464226, 07192095, 07197756 and 07227891.  Defendants have also separately provided information on the specific fields in the prescription drug transaction data produced via written interrogatories and depositions.  Other responsive documents will be withheld on the basis of Defendants' objections.

8

**DOCUMENT REQUEST NO. 30:**  All Documents necessary to efficiently re-adjudicate all claims for which Insured were Overcharged to calculate Overcharges on an individual and class basis.

**RESPONSE:**  Defendants reassert their objection to the definition of "Overcharges," as set forth above in the General Objections.  Defendants object to this Request as overly broad, vague, and ambiguous so as to make a response impossible without speculation.  Based on the Request as written, Defendants do not understand what Plaintiff is requesting and it would require speculation as to what Plaintiff believes is necessary to efficiently re-adjudicate any claims.

Defendants further object to this Request because the request for "[a]ll Documents necessary," is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  In addition, Plaintiff has not identified or indicated what information she believes is necessary to "efficiently readjudicate" all such claims.  It is Defendants' position that it is not possible to "efficiently readjudicate" such claims going back over 10 years.  In addition, the Request seeks irrelevant documents.  Consistent with the Court's order on Defendants' motion to dismiss in the Previous Action and the Stipulation for Partial Dismissal (ECF 63) and the corresponding Order (ECF 68), Plaintiff has dismissed all claims for transactions under prescription drug benefit plans that describe the member contribution amount as the lower of (1) the applicable Copayment and/or Coinsurance or (2) the network pharmacy's U&C (*i.e.*, "lesser-of-two"

plans).  Yet, because of the way that Plaintiff has defined "Overcharges," this Request includes documents relating to "lesser-of-two plans" not relevant to any claims or defenses in this case.  In addition, the definition of "Insureds" is overly broad and not limited to those that are relevant to the claims in this case.

Subject to and without waiving these objections, and pursuant to meet and confers with counsel for Plaintiff since Defendants' original responses and objections, Defendants have produced the prescription drug transaction data from October 4, 2010 through January 31, 2020 for Key and National self-funded groups as well as certain fully insured plans.  *See* UNH-06683000 – 06683084, UNH-SOHMER07043914 – 07043952 and UNH-SOHMER07197757 – 07197760.  Defendants have also produced an OLR Data Dictionary, an Integrated Data Warehouse Dictionary, a field list comparison chart to identify and connect archived pre-2015 OptumRx data, and current OptumRx data, and a data dictionary that provides information regarding the field names and descriptions for the transactions during the time period that Medco Health Solutions was the pharmacy benefit manager that were collected from the Gopher database, that provide Plaintiff additional information to calculate the "Overcharges" as defined by Plaintiff.  *See* UNH-Sohmer-06464226, 07192095, 07197756 and 07227891.  Other responsive documents will be withheld on the basis of Defendants' objections.

Dated:  September 25, 2020                    DORSEY & WHITNEY LLP


                                              By *s/ Michelle S. Grant*
                                                   Steven J. Wells (#163508)
                                                   wells.steve@dorsey.com
                                                   Michelle S. Grant (#0311170)
                                                   grant.michelle@dorsey.com
                                                   Andrew Holly (#308171)
                                                   holly.andrew@dorsey.com
                                                   Meghan DesLauriers (#0389034)
                                                   deslauriers.meghan@dorsey.com
                                                   Caitlin L.D. Hull (#0398394)
                                                   hull.caitlin@dorsey.com
                                              50 South Sixth Street, Suite 1500
                                              Minneapolis, MN 55402
                                              Telephone:  (612) 340-2600
                                              Facsimile:  (612) 340-2868

                                              *Attorneys for Defendants*