UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Samantha Sohmer and Kathy L. Fellgren,

        Plaintiffs,

v.

UnitedHealth Group Inc., United Healthcare Services, Inc., United HealthCare Insurance Company, Optum, Inc., and OptumRx, Inc.,

        Defendants.

Case No. 18-cv-3191 (JNE/BRT)
MEMORANDUM
**(FILED UNDER SEAL)**

Mathew P. Jasinski, Motley Rice, LLC; Amanda M. Williams, Gustafson Gluek, PLLC; Robert A. Izard, Izard, Kindall & Raabe, LLP; Ron Kilgard, Keller Rohrback, LLP; and Erin Green Comite, Scott+Scott, LLP, appeared for Samantha Sohmer.

Steven J. Wells, Michelle S. Grant, and Caitlin L.D. Hull, Dorsey & Whitney LLP, appeared for Defendants.

      This is a putative class action brought by Samantha Sohmer and Kathy L. Fellgren[1] against UnitedHealth Group Inc., United Healthcare Services, Inc., United HealthCare Insurance Company, Optum, Inc., and OptumRx, Inc. (collectively, "Defendants"). Sohmer alleged that she received prescription drug benefits through a group health plan administered and managed by Defendants and that Defendants caused her to be overcharged for prescription drugs in violation of the plan. Sohmer asserted a claim under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974

---

[1] The parties stipulated to dismiss Fellgren's claims under Rule 41(a)(1) and (2) of the Federal Rules of Civil Procedure. They also agreed that "Fellgren will no longer remain as a plaintiff to this action."

1

("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The case is before the Court on Sohmer's Motion for Class Certification. For the reasons set forth below, the Court denies the motion.

## I.   BACKGROUND

For many years, Sohmer was employed by Huntington Learning Corporation. She was also a participant in its self-funded group health plan. United Healthcare Services and United HealthCare Insurance (collectively, "United") acted as the claim administrator for Huntington's plan. Optum is a subsidiary of United Healthcare Services. OptumRx, Inc., which is a subsidiary of Optum, is a pharmacy benefit manager.

A plan sponsor, such as Huntington, designs its plan's prescription drug benefits. It decides how much the plan will pay and how much participants will pay. Under "traditional/spread" pricing, the plan sponsor agrees to pay United set prices for prescription drugs. OptumRx separately negotiates prices with network pharmacies. If OptumRx negotiates a more favorable price, United may retain the difference. If the amount paid by the plan sponsor is less than the price negotiated by OptumRx, United pays the difference. Under "pass-through" pricing, the plan sponsor receives the same prices that OptumRx negotiates with network pharmacies.

For plans administered by United, the amount paid by a plan participant for prescription drug benefits at a pharmacy is typically determined by either "lesser-of-two logic" or "lesser-of-three logic." Lesser-of-two ("L2") logic requires the participant to pay the lesser of (1) the applicable copayment or (2) the network pharmacy's usual and

customary charge. Lesser-of-three ("L3") logic requires the participant to pay the lesser of (1) the applicable copayment, (2) the network pharmacy's usual and customary charge, or (3) the price that United agrees to pay the pharmacy.

For self-funded plans administered by United, lesser-of-two logic was the default before 2017. According to David Harvey, finance director of United Healthcare—Employer and Individual Pharmacy, Huntington's plan was established and administered as a lesser-of-two plan. In approximately 2017, United shifted to lesser-of-three logic as the default for self-funded plans. Huntington switched to lesser-of-three in late 2017.

United prepared summary plan descriptions ("SPDs") for plan sponsors. United prepared one for Huntington with an effective date of October 1, 2012, and a revised date of January 1, 2013. It contains lesser-of-two logic. Sohmer received a copy. In subsequent years, United prepared SPDs for Huntington that include lesser-of-three logic. According to Defendants, the one for 2018 is the first that Huntington finalized and returned to United. They maintain that errors in templates used by United to create SPDs caused United to erroneously produce summary plan descriptions with lesser-of-three logic for many plan sponsors over many years.

The SPD prepared by United for Huntington in 2016 contains lesser-of-three logic. United submitted it to Huntington by e-mail dated February 5, 2016. The e-mail states:

> Attached for your review is a first 2016 draft SPDs for the following plan:
>
> Choice Plus Plan A (set 001)
>
> Choice Plus Plan B (set 002)

3

>>Choice Plus Value Plan (set 004)
>
>We will work with you in order to obtain final, approved documents.  In the meantime, we are posting the attached versions to our internal systems and will rely on them for making claim and appeals determinations for your plan participants.
>
>There are several advantages to you when we proceed in this way:
>
>- Alternate sources of truth do not necessarily contain the full details that are needed for certain determinations to be made.
>
>- As claims fiduciary under ERISA, UnitedHealthCare has a responsibility to administer the plan according to plan intent.
>
>- Our appeals area would be supported on a greater level with access to a greater degree of benefit detail, so appeals can be processed per the customer's intent and SPD language can be quoted in appeal letters.
>
>If there is an update required to the attached as a result of a material plan change, the SPD(s) will be revised accordingly.
>
>Once the documents are finalized, we will post the finalized versions.  Claims/appeals processed thereafter will be processed in accordance with the finalized documents.
>
>Since the attached documentation may be used to make benefit determinations, we ask that you do a review and notify us of any Plan benefits or provisions that do not reflect the Plan's intent.

There is no evidence in the record of a response from Huntington to the e-mail.

According to Sohmer, the 2016 summary plan description sent to Huntington by United is the governing plan.  For her purchases of prescriptions drugs in 2016, she

4

asserted that she paid $130.53 more than she should have because Defendants used lesser-of-two logic to adjudicate her claims instead of lesser-of-three logic. Sohmer moved to certify the following class:

> All members of group health plans administered by United HealthCare Services, Inc. and/or United HealthCare Insurance Company (together, "United"):
>
> 1. included on United's "list of plans with lesser-of-three logic language in the SPD for outpatient prescription drug purchases at retail Network Pharmacies that Defendants currently understand to have been adjudicated pursuant to lesser-of-two logic" ("L2 Adjudication List");
>
> 2. with a document effective date in the L2 Adjudication List between February 1, 2013 and December 31, 2016;
>
> 3. that are designated in Defendants' prescription drug transaction data as being governed by ERISA; and
>
> 4. for which United or its pharmacy benefit managers recouped member payments in excess of the Pharmacy Rate, as shown by the "CLAWBACK_INDICATOR" field in the prescription drug transaction data.

## II.   DISCUSSION

"'To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) [of the Federal Rules of Civil Procedure] and must satisfy one of the three subsections of Rule 23(b).' Plaintiffs carry the burden of showing that they have met those requirements." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018) (quoting *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005)). Rule 23(a) states:

>One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>>(1) the class is so numerous that joinder of all members is impracticable;
>>
>>(2) there are questions of law or fact common to the class;
>>
>>(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>>(4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) states:

>A class action may be maintained if Rule 23(a) is satisfied and if:
>
>>(1) prosecuting separate actions by or against individual class members would create a risk of:
>>
>>>(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; . . .
>>
>>(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>>
>>(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"The Rule 'does not set forth a mere pleading standard.' Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation,

6

as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "District courts must engage in a 'rigorous analysis' to determine whether the requirements of Rule 23 have been satisfied." *Postawko*, 910 F.3d at 1036 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.' 'Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Id.* at 1037 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)); *see Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960-61 (2021) ("As we have repeatedly explained, a court has an obligation before certifying a class to 'determin[e] that Rule 23 is satisfied, even when that requires inquiry into the merits.'").

**Numerosity**—It is undisputed that "the class is so numerous that joinder of all members is impracticable." There are approximately 1.1 million class members.

**Commonality**—"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349-50 (quoting *Falcon*, 457 U.S. at 157). "Their claims must depend upon a common contention," and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue

7

that is central to the validity of each one of the claims in one stroke." *Id.* at 350; *accord Postawko*, 910 F.3d at 1038.

According to Sohmer, "[t]he central common question in this case is whether Defendants improperly adjudicated prescription drug claims of Class members with lesser-of-two logic when the SPDs provided for lesser-of-three logic. Win or lose, there is one common answer to that common question." Quoting 29 U.S.C. § 1022(a), she stated that ERISA requires SPDs to "be sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan." Citing *MBI Energy Services v. Hoch*, 929 F.3d 506, 511 (8th Cir. 2019), she asserted that "the SPDs are the Plans."

Defendants maintained that Sohmer's claim does not present questions of law or fact common to the class. They asserted that there is no common proof of plan terms:

> To answer the preliminary question of what Plan terms apply to Sohmer's claim for benefits—as well as that same question for 1.1 million putative class members—requires a fact-specific inquiry and resolution of individualized questions, including whether any of the 9,849 SPDs at issue (nearly half of which were drafts) were made part of the Plan and, if so, when. This plan-by-plan analysis must be conducted for thousands of different plans offered by over 1,200 different plan sponsors. Sohmer does not—and cannot—present any uniform means of making this inherently individualized evidentiary determination.

"Even if Sohmer could establish a uniform means for determining the operative Plan for thousands of different benefit plans," Defendants argued, "the need to resolve United's scrivener's error defense precludes certification under Rule 23." They asserted that individualized determinations that defeat commonality are required with respect to

8

whether each plan is governed by ERISA and whether United is a proper defendant. Finally, "if Sohmer can prove that the SPD is the Plan and she is entitled to the lesser-of-three pricing and Minnesota's two-year statute of limitations does not apply", Defendants argued, "then the contractual limitations period in the SPDs should also be enforced, which would require this Court to examine individual SPDs with varying contractual limitations periods."

In her reply, Sohmer asserted that the relevant plan term is a common issue:[2]

> ***First***, the *only* relevant term involves L3 adjudication logic. The class definition restricts this case to benefit plans with substantially-similar SPD L3 adjudication language. What the plans say about countless *other* matters is irrelevant. ***Second***, only plans for which [Defendants] used L2 adjudication logic are included in the Class. The list of L3 plans that were adjudicated under L2 are [sic] set forth on [Defendants'] L2 Adjudication List.
>
> [Defendants] generated that list from each plan's operative SPD. Whether designated in [their] records as "final" or "operational draft," [Defendants] relied upon these SPDs "to make benefit determinations." In fact, [Defendants] made it clear to clients that [Defendants] would use operational drafts to adjudicate claims. Accordingly, plan sponsors had no reason to return the final SPDs to [Defendants] unless [the sponsors] revised them. Thus, it's not surprising that 40% of the SPDs in [Defendants'] system are identified as operational drafts. At a minimum, these SPDs are common (unrebutted) evidence of each plan's terms.

---

[2]   A declaration submitted with Sohmer's reply indicates that an expert report "inadvertently omitted 13 SPDs from its count of SPDs at issue." Thus, there are 9,862 SPDs at issue.

Pl.'s Reply 7, ECF No. 188 (footnote omitted) (citations omitted).  Sohmer maintained that none of the other issues identified by Defendants defeats commonality.

"Every employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and shall "specify the basis on which payments are made to and from the plan," *id.* § 1102(b)(4).  "The plan's sponsor (*e.g.*, the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument 'a procedure' for making amendments.  The plan's administrator, a trustee-like fiduciary, manages the plan, follows its terms in doing so, and provides participants with the summary documents that describe the plan (and modifications) in readily understandable form."  *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011) (citation omitted).

A participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §1132(a)(1)(B).  A claim under § 1132(a)(1)(B) "stands or falls by 'the terms of the plan.'"  *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting § 1132(a)(1)(B)).

"[I]dentifying 'the plan' is not always a clear-cut task.  '[O]ften the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as "the plan."'"  *Admin. Comm. of Wal-Mart Stores, Inc. v. Gamboa*, 479 F.3d 538, 542 (8th Cir. 2007) (alteration in original) (quoting *Health Cost Controls of Ill., Inc. v. Washington*,

187 F.3d 703, 712 (7th Cir. 1999)); *accord MBI Energy*, 929 F.3d at 509. In *Gamboa*, the Eighth Circuit stated that a summary plan description can, under certain circumstances, serve as the plan: "But this case presents a circumstance where there is a welfare program specified but no formal document with the same label, and no source of benefits exists aside from the written Associate Benefits Book.  Where no other source of benefits exists, the summary plan description *is* the formal plan document, regardless of its label."  479 F.3d at 544.

Later, the Supreme Court stated that a summary plan description may not necessarily "be enforced (under § 502(a)(1)(B)) as the terms of the plan itself." *Amara*, 563 U.S. at 437-38 ("For these reasons taken together we conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)."). In *MBI Energy*, the Eighth Circuit summarized the Supreme Court's reasoning in *Amara*:

> Three factors drove the Court's analysis.  First, the language of the statutory text mandating that summary plan descriptions apprise beneficiaries of their rights and obligations "under the plan" indicated that "the information *about* the plan provided by those disclosures is not itself *part of* the plan." Second, ERISA's division of authority between a plan's sponsor (responsible for creating a plan's terms) and the plan's administrator (responsible for managing the plan and providing the summary plan descriptions) meant that treating a summary plan description as part of the plan would give the administrator the power to set terms that should be set by the sponsor.  Third, construing summary plan descriptions as legally binding parts of a plan could lead administrators to favor legalese over "clear, simple communication," defeating the purpose of such summaries.

11

*MBI Energy*, 929 F.3d at 510 (quoting *Amara*, 563 U.S. at 437-38). Acknowledging that the Supreme Court's decision in *Amara* "undermines parts of *Gamboa*'s reasoning," the Eighth Circuit stated that "*Gamboa* remains binding law in this circuit":

> While *Amara* undermines parts of *Gamboa*'s reasoning, it does not address the question we decided in *Gamboa*: whether, in the absence of any other plan document providing benefits, the summary plan description could constitute the plan. Thus, because *Amara* "rests in important part upon the circumstances present" in that case (namely that there was both a plan document and a summary plan description) that are not present here (where the SPD is the only benefit-providing Plan document), *Gamboa* remains binding law in this circuit. Indeed, several other circuit courts have considered this question and concluded that *Amara* does not prevent a summary plan description from functioning as the plan in the absence of a formal plan document. Thus, applying *Gamboa*, we hold that the SPD is the Plan's written instrument because it is the only document providing benefits.

*MBI Energy*, 929 F.3d at 510-11 (citations omitted).

As noted above, Sohmer asserted that "[t]he central common question in this case is whether Defendants improperly adjudicated prescription drug claims of Class members with lesser-of-two logic when the SPDs provided for lesser-of-three logic." To conclude that a common question exists, the Court would need to know, among other things, that none of the 1.1 million class members participated in a plan whose sponsor maintained a formal plan document or other plan documents providing benefits. *See id*. Sohmer made no such demonstration. For each of the almost 10,000 summary plan descriptions, the Court will have to undertake what "is not always a clear-cut task"—identification of the plan—before the Court considers whether "Defendants improperly adjudicated prescription drug claims of Class members with lesser-of-two logic." The putative class

12

members' claims do not depend on a common contention that is capable of classwide resolution. Because Sohmer has not demonstrated that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a), the Court denies her motion.[3]

### III.   CONCLUSION

The Court will issue a separate order that is consistent with this Memorandum.

Dated: September 10, 2021

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[3] Having concluded that Sohmer failed to demonstrate that "there are questions of law or fact common to the class," the Court need not consider the parties' remaining arguments.

13