UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Samantha Sohmer and Kathy L. Fellgren,

      Plaintiffs,

v.

UnitedHealth Group Inc., United Healthcare Services, Inc., United HealthCare Insurance Company, Optum, Inc., and OptumRx, Inc.,

      Defendants.

Case No. 18-cv-3191 (JNE/BRT)
MEMORANDUM
**(FILED UNDER SEAL)**

---

Mathew P. Jasinski, Motley Rice, LLC; Amanda M. Williams, Gustafson Gluek, PLLC; Seth R. Klein, Izard, Kindall & Raabe, LLP; Chris Graver, Keller Rohrback, LLP; and Erin Green Comite, Scott+Scott, LLP, appeared for Samantha Sohmer.

Michelle S. Grant, Steven J. Wells, Shannon L. Bjorklund, and Caitlin L.D. Hull, Dorsey & Whitney LLP, appeared for Defendants.

---

      Samantha Sohmer and Kathy L. Fellgren[1] brought this action against UnitedHealth Group Inc., United Healthcare Services, Inc., United HealthCare Insurance Company, Optum, Inc., and OptumRx, Inc. (collectively, "Defendants"). Sohmer alleged that she received prescription drug benefits through a group health plan administered and managed by Defendants and that Defendants caused her to be overcharged for prescription drugs in violation of the plan. Sohmer asserted a claim under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

---

[1] The parties stipulated to dismiss Fellgren's claims under Rule 41(a)(1) and (2) of the Federal Rules of Civil Procedure. They also agreed that "Fellgren will no longer remain as a plaintiff to this action."

1

U.S.C. § 1132(a)(1)(B).  The case is before the Court on Defendants' Motion for Summary Judgment.  For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

For many years, Sohmer was employed by Huntington Learning Corporation.  She was also a participant in its self-funded group health plan.  United Healthcare Services and United HealthCare Insurance (collectively, "United") acted as the claim administrator for Huntington's plan.  Optum is a subsidiary of United Healthcare Services.  OptumRx, Inc., which is a subsidiary of Optum, is a pharmacy benefit manager.

A plan sponsor, such as Huntington, designs its plan's prescription drug benefits.  It decides how much the plan will pay and how much participants will pay.  Under "traditional/spread" pricing, the plan sponsor agrees to pay United set prices for prescription drugs.  OptumRx separately negotiates prices with network pharmacies.  If OptumRx negotiates a more favorable price, United may retain the difference.  If the amount paid by the plan sponsor is less than the price negotiated by OptumRx, United pays the difference.  Under "pass-through" pricing, the plan sponsor receives the same prices that OptumRx negotiates with network pharmacies.

For plans administered by United, the amount paid by a plan participant for prescription drug benefits at a pharmacy is typically determined by either "lesser-of-two logic" or "lesser-of-three logic."  Lesser-of-two logic requires the participant to pay the lesser of (1) the applicable copayment or (2) the network pharmacy's usual and customary charge.  Lesser-of-three logic requires the participant to pay the lesser of (1)

2

the applicable copayment, (2) the network pharmacy's usual and customary charge, or (3) the price that United agrees to pay the pharmacy.

For self-funded plans administered by United, lesser-of-two logic was the default before 2017. According to David Harvey, finance director for United Healthcare—Employer and Individual Pharmacy, Huntington's plan was established and administered as a lesser-of-two plan. In approximately 2017, United shifted to lesser-of-three logic as the default for self-funded plans. Huntington elected to switch to lesser-of-three logic in late 2017.

United prepares summary plan descriptions for plan sponsors. United prepared one for Huntington with an effective date of October 1, 2012, and a revised date of January 1, 2013. It contains lesser-of-two logic. Sohmer received a copy. In subsequent years, United prepared summary plan descriptions for Huntington that include lesser-of-three logic. According to Defendants, the one for 2018 is the first that Huntington finalized and returned to United. They maintain that errors in templates used by United to create summary plan descriptions caused United to erroneously produce summary plan descriptions with lesser-of-three logic for many plan sponsors over many years.

The summary plan description prepared by United for Huntington in 2016 contains lesser-of-three logic. United submitted it to Huntington by e-mail dated February 5, 2016. The e-mail states:

> Attached for your review is a first 2016 draft SPDs for the following plan:
>
> Choice Plus Plan A (set 001)

>Choice Plus Plan B (set 002)
>
>Choice Plus Value Plan (set 004)
>
>We will work with you in order to obtain final, approved documents. In the meantime, we are posting the attached versions to our internal systems and will rely on them for making claim and appeals determinations for your plan participants.
>
>There are several advantages to you when we proceed in this way:
>
>- Alternate sources of truth do not necessarily contain the full details that are needed for certain determinations to be made.
>
>- As claims fiduciary under ERISA, UnitedHealthcare has a responsibility to administer the plan according to plan intent.
>
>- Our appeals area would be supported on a greater level with access to a greater degree of benefit detail, so appeals can be processed per the customer's intent and SPD language can be quoted in appeal letters.
>
>If there is an update required to the attached as a result of a material plan change, the SPD(s) will be revised accordingly.
>
>Once the documents are finalized, we will post the finalized versions. Claims/appeals processed thereafter will be processed in accordance with the finalized documents.
>
>Since the attached documentation may be used to make benefit determinations, we ask that you do a review and notify us of any Plan benefits or provisions that do not reflect the Plan's intent.

There is no evidence in the record of a response from Huntington to the e-mail.

According to Sohmer, the 2016 summary plan description sent to Huntington by United is the governing plan. For her purchases of prescriptions drugs in 2016, she

4

asserted that she paid $130.53 more than she should have because Defendants used lesser-of-two logic to adjudicate her claims instead of lesser-of-three logic.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.  Plan**

Defendants asserted that summary judgment in their favor is appropriate "[b]ecause Sohmer cannot demonstrate that her Plan provided for lesser-of-three benefits." They maintained there is no evidence that Huntington intended the draft summary plan description on which Sohmer relies to constitute the plan or that the draft "was ever finalized or adopted by Huntington." Sohmer responded that "[t]he 2016 SPD is the governing plan document" and that it "is sufficient evidence of plan terms."

5

"Every employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and shall "specify the basis on which payments are made to and from the plan," *id.* § 1102(b)(4).  "The plan's sponsor (*e.g.*, the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument 'a procedure' for making amendments.  The plan's administrator, a trustee-like fiduciary, manages the plan, follows its terms in doing so, and provides participants with the summary documents that describe the plan (and modifications) in readily understandable form." *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011) (citation omitted).

A participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B).  A claim under § 1132(a)(1)(B) "stands or falls by 'the terms of the plan.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (citation omitted).

"[I]dentifying 'the plan' is not always a clear-cut task.  '[O]ften the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as "the plan."'" *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 542 (8th Cir. 2007) (second alteration in original) (citation omitted); *accord MBI Energy Servs. v. Hoch*, 929 F.3d 506, 509 (8th Cir. 2019).  In *Gamboa*, the Eighth Circuit stated that a summary plan description can, under certain

6

circumstances, serve as the plan: "But this case presents a circumstance where there is a welfare program specified but no formal document with the same label, and no source of benefits exists aside from the written Associate Benefits Book. Where no other source of benefits exists, the summary plan description *is* the formal plan document, regardless of its label." 479 F.3d at 544.

Later, the Supreme Court stated that a summary plan description may not necessarily "be enforced (under § 502(a)(1)(B)) as the terms of the plan itself." *Amara*, 563 U.S. at 437-38 ("For these reasons taken together we conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)."). In *MBI Energy*, the Eighth Circuit summarized the Supreme Court's reasoning in *Amara*:

> Three factors drove the Court's analysis. First, the language of the statutory text mandating that summary plan descriptions apprise beneficiaries of their rights and obligations "under the plan" indicated that "the information *about* the plan provided by those disclosures is not itself *part of* the plan." Second, ERISA's division of authority between a plan's sponsor (responsible for creating a plan's terms) and the plan's administrator (responsible for managing the plan and providing the summary plan descriptions) meant that treating a summary plan description as part of the plan would give the administrator the power to set terms that should be set by the sponsor. Third, construing summary plan descriptions as legally binding parts of a plan could lead administrators to favor legalese over "clear, simple communication," defeating the purpose of such summaries.

*MBI Energy*, 929 F.3d at 510 (citations omitted).  Acknowledging that the Supreme Court's decision in *Amara* "undermines parts of *Gamboa*'s reasoning," the Eighth Circuit stated that "*Gamboa* remains binding law in this circuit":

> While *Amara* undermines parts of *Gamboa*'s reasoning, it does not address the question we decided in *Gamboa*: whether, in the absence of any other plan document providing benefits, the summary plan description could constitute the plan.  Thus, because *Amara* "rests in important part upon the circumstances present" in that case (namely that there was both a plan document and a summary plan description) that are not present here (where the SPD is the only benefit-providing Plan document), *Gamboa* remains binding law in this circuit.  Indeed, several other circuit courts have considered this question and concluded that *Amara* does not prevent a summary plan description from functioning as the plan in the absence of a formal plan document.  Thus, applying *Gamboa*, we hold that the SPD is the Plan's written instrument because it is the only document providing benefits.

*Id.* at 510-11 (citations omitted).

According to Sohmer, the 2016 summary plan description is the governing plan document or is sufficient evidence of plan terms.  She pointed to evidence that United used summary plan descriptions to make benefit determinations and "made it clear to clients, *including Huntington*, that it would use operational draft SPDs to adjudicate claims."  Sohmer asserted that "[t]he only plan document for 2016 in the administrative record is the 2016 SPD" and that "United has not identified any other plan document as a source of Sohmer's benefits—either now or during the administrative review process."

Sohmer is attempting to enforce the terms of a draft summary plan description prepared by a claim administrator without any evidence that the plan sponsor failed to maintain a separate written instrument setting forth the terms and conditions of its plan

8

and without any evidence that the plan sponsor adopted or otherwise intended the draft summary plan description to constitute the plan.[2] Viewing the record in the light most favorable to Sohmer, the Court concludes that she failed to demonstrate she is entitled to lesser-of-three benefits for her prescription drug purchases in 2016. *Cf. Amara*, 563 U.S. at 437 ("[W]e have no reason to believe that the statute intends to mix the responsibilities by giving the [plan] administrator the power to set plan terms indirectly by including them in the summary plan descriptions."); *Peters v. Aetna Inc.*, 2 F.4th 199, 211 n.3 (4th Cir.) (accepting summary plan description "as representative of the Plan" where "the actual Plan document is not in the record and neither the parties nor the district court appear to have addressed or relied on it during this litigation, instead referencing the SPD as fully representative of the Plan" and no claim was made "that the SPD varies in any material way from the Plan"), *petition for cert. filed*, 90 U.S.L.W. 3168 (U.S. Nov. 17, 2021) (No. 21-761). The Court therefore grants Defendants' motion.

**B.     Reformation**

Were Sohmer able to demonstrate that her plan provided lesser-of-three benefits for her prescription drug purchases in 2016, Defendants maintained that the plan should

---

[2]     In their reply, Defendants stated: "Sohmer never subpoenaed Huntington for its Plan documents. She never deposed a Huntington corporate representative or other employee to elicit testimony as to what documents comprised its Plan. She never even attempted to preserve her own copy of Plan documents or request copies from her employer. There is no evidence that Sohmer or any other Plan participant ever received or even saw [the 2016] draft."

be reformed to provide lesser-of-two benefits.[3] Defendants asserted that the 2016 SPD "provided United with discretionary authority"; that "United reasonably concluded based on substantial documentary evidence that the draft Huntington SPD in its files was erroneously drafted and did not reflect the intent of the parties"; and that its "determination was not arbitrary or capricious and therefore was not an abuse of discretion." "Regardless of the standard of review," Defendants argued, "United is entitled to reformation because the evidence is clear and convincing that a drafting error occurred and there is no evidence Sohmer read or relied on the erroneous language."

Sohmer argued that "United is not entitled to reformation." She maintained that "United's reformation claim is subject to de novo review." Sohmer asserted that United did not meet its burden to establish reformation is appropriate because "United cannot show either mutual mistake or unilateral mistake with fraud, as required under contract law"; that "[t]rust law cannot trump foundational ERISA principles that reformation is inappropriate in the ERISA context where the 2016 SPD is unambiguous"; that

---

[3] Defendants asserted reformation as an affirmative defense. In addition, United asserted reformation as a counterclaim "[t]o the extent necessary to preserve [its] defense that [it is] entitled to reformation of plan language to reflect the intent of plan sponsors." *See* 29 U.S.C. § 1132(a)(3). Earlier in this litigation, United asserted that "reformation can and should be considered as an affirmative defense in connection with [Sohmer's] claim under ERISA Section 502(a)(1)(B), and need not be asserted in the form of a counterclaim." The parties did not address whether reformation should be considered as an affirmative defense or a counterclaim in connection with Defendants' motion. Defendants asserted the Court "should grant summary judgment on United's affirmative defense or counterclaim and reform the 2016 SPD to correct the drafting error" to provide for lesser-of-two benefits. The Court assumes, without deciding, that United's assertion of reformation may be considered as an affirmative defense and dismisses the counterclaim without prejudice.

10

reformation is inappropriate under trust law "because United has not shown by clear and convincing evidence that Huntington intended [lesser-of-two] logic"; and that her reliance is "irrelevant."

"The doctrine of equitable reformation does not apply in the context of an administrator's interpretation of an ERISA plan; the administrator cannot simply 'reform' a plan to correct what it unilaterally perceives to be a mistake or error contained in the plan's written terms.  Rather, reformation, like other forms of equitable relief, must be requested by the party seeking to reform the contract and granted by a court."  *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 642 (4th Cir. 2007), *abrogated on other grounds by Williams v. Met. Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010); *see Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 389 (8th Cir. 2017) (stating that 29 U.S.C. § 1132(a)(3) "allow[s] courts to reform contracts that failed to express the agreement of the parties" (alteration in original) (quoting *Silva v. Met. Life Ins. Co.*, 762 F.3d 711, 723 (8th Cir. 2014))).  The Court rejects Defendants' assertion that United's determination should be reviewed for abuse of discretion.  Instead, the Court reviews it de novo.  *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) (affirming district court's de novo consideration of reformation claim).

"ERISA § 502(a)(3) authorizes equitable reformation of a plan that is shown, by clear and convincing evidence, to contain a scrivener's error that does not reflect participants' reasonable expectations of benefits."  *Id.* at 819; *see Cent. Valley Ag Coop. v. Leonard*, 986 F.3d 1082, 1088 (8th Cir. 2021) ("The record supports the district court's finding that the 10% fee listed in the RBR plan was a 'scrivener's error,' allowing the

11

court to fix the error."). "Drafting mistakes in ERISA plans may take many forms; some involve language that is ambiguous on its face while others . . . involve language that is not intrinsically ambiguous but still misstates participants' benefits. It would not further the purposes of ERISA to allow courts to correct one type of mistake but not the other." *Young*, 615 F.3d at 820.

"[E]quitable reformation of an ERISA plan creates some tension with the 'written instrument' requirement of 29 U.S.C. § 1102(a)(1), also known as the 'plan documents rule.'" *Id.* (citations omitted). The "rule ensures 'that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan,' without complicated 'enquiries into nice expressions of intent' behind plan language." *Id.* (citations omitted). "[L]imitations on the equitable reformation claim . . . will mitigate its impact on the plan documents rule. Only those who can marshal 'clear and convincing' evidence that plan language is contrary to the parties' expectations will have a viable claim." *Id.* (citation omitted). "The evidence also must be 'objective' and not dependent 'on the credibility of testimony (oral or written) of an interested party.'" *Id.* (citation omitted).

The record reveals that, in approximately 2010 and 2011, United revised templates used to create summary plan descriptions. The revisions introduced lesser-of-three logic as optional language to some templates. Subsequent revisions yielded templates that contain lesser-of-three logic as standard language.

Huntington's plan was established and administered for many years as a lesser-of-two plan. United prepared a summary plan description for Huntington with an effective

date of October 1, 2012, and a revised date of January 1, 2013.  The summary plan description contains lesser-of-two logic.  Sohmer received a copy of it.  The draft summary plan description prepared by United for Huntington for 2016 contains lesser-of-three logic.  There is no evidence that Sohmer or any other plan participant received a copy of the 2016 draft.

In late 2015, United and Huntington exchanged e-mails about the 2016 plan design.  Noting that "RX has not changed," United submitted a summary of pharmacy benefits for 2016 to Huntington in late October 2015.  A few weeks later, Huntington asked for a final copy to send to employees.  United sent the summary to Huntington.  It states that the participant is "responsible for paying the lower of the applicable Copayment or the retail Network Pharmacy's Usual and Customary Charge."

The general conditions of Huntington's Pharmacy Financials applicable from October 1, 2015, to September 30, 2016, are consistent with the summary's statement of lesser-of-two benefits.  The general conditions state that "[t]he less[e]r of two logic (ZBL) will apply to Participant payments" and that "[p]articipants pay the less[e]r of the usual and customary charge or the coinsurance amount."  The general conditions of Huntington's Pharmacy Financials applicable from October 1, 2016, to September 30, 2017, are essentially the same, replacing "coinsurance amount" with "cost share amount."  United's underwriting approval forms for the same time periods indicate that Huntington's plan was priced as a lesser-of-two plan.  United's underwriting approval form applicable from October 1, 2017, to September 30, 2018, reflects Huntington's switch to a lesser-of-three plan for the 2018 plan year.

An amendment to United and Huntington's administrative services agreement also indicates that lesser-of-two benefits applied in 2016. The amendment, executed in April 2017 and made effective on October 1, 2016, includes general conditions of pharmacy financials that state that "[t]he less[e]r of two logic (ZBL) will apply to Participant payments" and that "[p]articipants pay the less[e]r of the usual and customary charge or the cost share amount."

Viewing the record in the light most favorable to Sohmer, the Court concludes that the 2016 summary plan description contains "a scrivener's error that does not reflect participants' reasonable expectations of benefits." *Id.* at 819. Were the 2016 summary plan description the governing plan document, reformation would be appropriate to correct its erroneous statement of lesser-of-three benefits.

### III.   CONCLUSION

The Court will issue a separate order that is consistent with this Memorandum.

Dated: December 28, 2021

s/Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge